# FIRST DISTRICT, 1901.

### H. B. PECK v. CITY OF HEMPSTEAD.

Decided November 25, 1901.

**1.—Municipal Bonds—Validity—Provision for Payment.**

Where city bonds are issued and there is a failure to make provision at the time of their issuance for the assessment and collection annually of a sum sufficient to pay the interest thereon and create a 2 per cent sinking fund, as required by the Constitution, the bonds can not be enforced. Const., art. 11, sec. 5.

**2.—Same—Estoppel—Innocent Purchaser.**

Where negotiable city bonds were issued by the mayor and city secretary, having printed on the backs thereof what purported to be an order of the city council authorizing their issuance, but no such order was in fact ever passed, the city was not estopped to deny the validity of the bonds, although they had been sold to an innocent purchaser for value and the proceeds appropriated by the city.

**3.—Same—Bonds in Excess of Tax Rate—Notice.**

Where city bonds have been issued to the full amount authorized under the constitutional limit as to taxation, a purchaser of bonds thereafter issued by the city is required to take notice of such fact.

Appeal from Waller. Tried below before Hon. Wells Thompson.

*A. C. Tompkins,* for appellant.

*J. D. Harvey,* for appellee.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellant, H. B. Peck, against the city of Hempstead, Texas, as a defunct municipal corporation, to recover upon ninety-nine coupons cut from

certain bonds alleged to have been issued by said city. The bonds from which the coupons were detached were six bonds, numbered 17, 18, 19, 20, 21, and 22 respectively, for the sum of $500 each, dated January 3, 1887, and payable twenty-five years after date with 8 per cent interest per annum, interest payable semi-annually on the first days of January and July each year. On bonds 17, 18, and 19 there were sixteen installments of interest due on each, and on 20, 21, and 22 there were due on each seventeen installments, each evidenced by a coupon for $20, making the aggregate amount due and for which this suit is brought, $1980. The bonds were all of the same tenor and effect as No. 17, which is as follows:

"No. 17.                                                          Dollars 500.
"UNITED STATES OF AMERICA.
"State of Texas, County of Waller.
"The city of Hempstead, in the State of Texas, twenty-five years after date will pay to the bearer hereof, at Hempstead, Texas, the sum of five hundred dollars lawful money of the United States, with interest thereon from date at the rate of eight per cent per annum, payable semi-annually at the office of the city treasurer of the city of Hempstead, on the first day of January and July each year, upon presentation of the proper coupon hereto attached, signed by the mayor and countersigned by the secretary of said city. This bond is one of a series of six bonds of like tenor and amount, numbered from 17 to 22 inclusive, issued by virtue of an ordinance of said city, enacted on the 10th day of December, A. D. 1886, and printed on the reverse side hereof, for the purpose of completing the public school building in and for said city. In witness whereof the city council of the said city of Hempstead have caused these presents to be signed by the mayor and countersigned by the secretary of said city of Hempstead, this the third day of January, A. D. 1887.
                              [Seal.]    "C. D. ROBINSON, Mayor.
"JAMES D. MONTGOMERY, Secretary."

The coupons attached, to become due January 1st, and July 1st of each year until maturity, are all alike except as to number and due date; one of them being as follows:
"The city of Hempstead will pay to bearer $20 at the office of the city treasurer of the city of Hempstead, on the 1st day of January, 1892, being six months interest due on bond No. 17. C. D. Robinson, Mayor. Jas. D. Montgomery, Secretary."
On the back of each of said bonds 17, 18, 19, 20, 21, and 22 is printed, to wit: "An ordinance to provide for the issuing bonds to complete the public school building, and also for the levy of a tax for the payment of the principal and interest of said bonds. Whereas the city of Hempstead has assumed control of the public free schools therein, in accordance with the Constitution and laws of the State of Texas, and it is

necessary to complete the public school building, now in course of erection; and whereas, by virtue of articles 419 to 424 inclusive of the Revised Statutes of the State of Texas, the said city is empowered to issue bonds for the purpose of building a public school building, in such amounts as may be necessary under certain restrictions therein named; and whereas the property within said city subject to an ad valorem tax amounts to the sum of $557,484, as appears from the tax rolls of said city for the year 1885; therefore be it ordained by the city council of the city of Hempstead in the State of Texas, that:

"Section 1.   There shall be issued by the city of Hempstead for the purpose of the completion of the public school building now in course of erection in and for said city, coupon bonds of said city to the amount of $3000 in denominations of $500 each, bearing interest at the rate of eight per cent per annum, the said interest being made payable semi-annually on the first days of January and July of each and every year, at the office of the city treasurer of the said city of Hempstead, in the State of Texas, twenty-five years from date.

"Section 2.   Said bonds shall be signed by the mayor and countersigned by the secretary of said city, and shall be registered in the office of the Comptroller of the State of Texas, and shall bear date the third day of January, A. D. 1887.

"Section 3.   For the purpose of meeting the interest on said bonds and providing an annual sinking fund sufficient to discharge the principal at maturity, an ad valorem tax of ten cents on the one hundred dollars on all property in said city, subject to taxation on the first day of January, A. D. 1887, is hereby levied, and the assessor and collector shall proceed to assess and collect the same as other taxes, and each year thereafter there shall be levied and collected by the council such a tax as shall be sufficient to pay the interest semi-annually on said bonds, and provide a sinking fund for the payment of said bonds at maturity.

"Section 4.   That this ordinance take effect and be in force from and after its passage.

"Approved December 10, 1886.   C. D. Robinson, Mayor.   Attest: Jas. D. Montgomery, Secretary."

The bonds bore indorsements as follows:

"No. 17.   The City of Hempstead, Public School Bond.   $500.   Payable January 3, 1912, at Hempstead, Texas.   Interest eight per cent, payable semi-annually on the first days of January and July at the office of the city treasurer of the city of Hempstead, Texas.   Registered January 4, 1887.   Wm. J. Swain, Comptroller."

The ordinance printed upon the bonds and above set out was not at any time passed nor authorized by the city council of the city of Hempstead, nor does same appear of record in the minutes of said city council, and the city council never at any time authorized nor provided for the issuance of $3000 in bonds for the purpose of the completion of the public school building.

The city of Hempstead was duly incorporated as such under the gen-

eral law of the State of Texas, and had such corporate existence on the several dates herein mentioned until March, 1899, when the corporation was legally abolished and the Commissioners Court of Waller County, now composed of John M. Pinckney, county judge, and A. Guillemet, W. A. Sorsby, J. B. Brown, and J. G. Kellner, commissioners, assumed control of the affairs of the city as provided by law.

On March 2, 1886, the city council passed an ordinance authorizing the issue and the sale of bonds for $8000 of $500 each, payable twenty-five years after date, with 8 per cent interest payable semi-annually, for which coupons were attached. These bonds were issued and sold, and were numbered from 1 to 16, inclusive. They were issued for the erection of a public school building, and at the time of their issuance the city council levied a tax of 25 cents on the $100 assessed valuation of property subject to taxation to pay the interest and create a sinking fund for their redemption, which was the full extent of the power of the city to tax for that purpose. On December 10, 1886, it having appeared that additional funds were necessary to complete and inclose the building, the city council passed an ordinance for the purpose, as recited therein, of *funding the floating indebtedness* of the city, but intended in fact to raise the sum necessary for completing the public school building as above stated, as well as to fund the floating indebtedness. This ordinance provided for the issuance and sale of six bonds each for the sum of $500, of the same tenor and effect with those involved in this suit, but when they were presented to the Comptroller he refused to register them because their issuance was unauthorized, and they were in fact never issued. Whereupon James D. Montgomery, the city secretary, filed with the Comptroller of the State of Texas what purported to be the copy of an ordinance authorizing the issuance of the bonds for the purpose of the completion of the public school building as the same appears printed on the back of the bond as above set out; and the mayor of the city and the said Montgomery as secretary signed and issued the bonds without the knowledge of the members of the city council that they had not been issued in accordance with the ordinance as actually passed on December 10, 1886. The city council did not cause or authorize the issuance of said bonds, nor did it authorize the mayor or secretary to sign the same. On January 1, 1886, the assessment rolls of the city showed the total valuation of all property rendered for city taxation to be $511,216; on January 1, 1887, $481,298; on January 1, 1888, $433,537; and on January 1, 1889, $395,308. The bonds were registered with the Comptroller, and in March, 1887, were sold at par to Noel & Co., of St. Louis, Mo., and the proceeds were paid into the treasury of the city of Hempstead. Afterwards and before any installment of interest thereon fell due, the appellant became the purchaser of said bonds without knowledge of any irregularity or illegality in the issuance thereof, and is an innocent holder thereof without actual notice of the fact that no ordinance was ever actually passed authorizing their issuance. Interest upon the bonds was paid regularly by the city until July 1, 1891, when

default was made on numbers 20, 21 and 22. Since that date no interest whatever has been paid, and the coupons declared on in the petition all remain unpaid. We do not find it anywhere stated in the statement of facts or the conclusions of the trial judge that the city of Hempstead ever assumed control of the public schools within its limits. Rev. Stats., 1879, art. 380a. But there is a recital to that effect in the ordinance printed on the back of the bonds.

The cause was tried by the court without a jury and judgment was rendered for the city, the court holding that the bonds were illegal because their issuance was not authorized by the city council. The trial judge filed his conclusions of facts and law, to which reference is made for a fuller statement of the facts if deemed necessary. The bonds from which the coupons sued on were cut were negotiable instruments. Board v. Railway, 46 Texas, 316. And the appellant as a purchaser thereof for value before maturity without knowledge of any irregularity in their issue is entitled to the protection given by law to an innocent holder of negotiable securities. In order to become legal and valid obligations of the city the issuance of the bonds must have been authorized by some law. Articles 420-424 of the Revised Statutes of 1879 give the power to issue them and made provisions for the manner in which it should be executed. The power was granted to the city by its charter to issue coupon bonds of the city to borrow money for the erection of public buildings, and this has been held to include public school buildings where a city has assumed control of its public schools. Acts 1885, p. 99; Dwyer v. Hackworth, 57 Texas, 250. Article 421 required that when the bonds were issued by the city a fund should be provided to pay the interest and create a sinking fund to redeem them. The amount of tax which might be levied for this purpose was limited by the Constitution to 25 cents on the $100 valuation in any one year. Const., art. 8, sec. 9. And the Constitution also provided that no debt should ever be created by any city unless at the same time provision should be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent thereon. Const., art. 11, sec. 5; Rev. Stats., 1879, art. 427. When there is a failure to make such provision the obligation can not be enforced. Biddle v. City of Terrell, 82 Texas, 335; City of Terrell v. Dessaint, 71 Texas, 772. In making provision for the payment of the interest and the creation of a sinking fund for the payment of the issue of $8000 bonds by the ordiance of March 2, 1886, the city exhausted the limit of taxation, and the levy of 10 cents on the $100 valuation of property made in the ordinance printed on the back of the bonds, if otherwise valid, was void for the want of power in the council to levy it. Or if it should be regarded as an appropriation of so much of the levy made for the $8000 issued, it would be illegal because article 421 required that the fund provided to pay the interest and create a sinking fund to redeem bonds shall not be diverted nor drawn upon for any other purpose than to pay the interest or redeem the bonds for which it was provided. The decision in Mitchell

County v. Bank, 91 Texas, 361, goes no further than to hold that it is not necessary for the commissioners court issuing the bonds to make the provision for the payment of the interest and the creation of a sinking fund when the enabling act itself makes fixed and definite arrangements for the levy and collection of the tax. The provision made by the charter was for a levy of not exceeding 25 cents on the $100 valuation; that was exhausted in the provision for the $8000; hence there was *no* provision for the collection of a tax to pay the bonds from which the coupons sued on were cut, and according to the above cited decisions they were not valid obligations against the city.

A city corporation as a general rule is only liable upon express contracts authorized by ordinance or other due corporate proceedings. 1 Dill. Mun. Corp., 461; City of Bryan v. Page, 51 Texas, 534; City of San Antonio v. French, 80 Texas, 578; Wagner v. Porter, 56 S. W. Rep., 560; Brown v. Reese, 67 Texas, 318. The power to issue the bonds in this case was vested in the city acting by the city council. It was given in the chapter on the general powers and duties of the city council. Rev. Stats., 1879, title 17, chap. 4. The corporation in the issuance of the bonds could only act by the city council; and that body could only express itself by resolution or ordinance. In the case of Ball v. Presidio County, 88 Texas, 60, it was held that the commissioners court could not exercise the power conferred by law to issue bonds except by an order of the court duly made and evidenced by the minutes of the court. To the same effect is Polly v. Hopkins, 74 Texas, 145. The opinion of the court in Ball v. Presidio County, supra, pronounces the bonds under discussion in that case, issued without an order of the court to support them, void. Our conclusion, therefore, is that the bonds in controversy in this case are void, both because there was no provision made for payment and because they were not authorized by any ordinance or resolution of the city council.

This brings us to the consideration of the question of estoppel against the city by the recitals in the bonds and the purported ordinance printed on the back thereof in favor of the appellant as an innocent holder. In the case of Ball v. Presidio County, supra, the court did not decide that the bonds, void as between the county and the party to whom they were issued, would have been void as to an innocent holder for value, but upon an examination of the recitals in the bonds held that Ball, Hutchings & Co. were not shown to be innocent holders. So the question seems to have been left open in the face of the important fact that the authority vested by law in the commissioners court to issue the bonds had not been exercised by the court, and that they were not the act of the county.

The case of Nolan County v. State, 83 Texas, 194, sustains an estoppel by recital only of a condition precedent when an order of the court had been made for the issue of the bonds. The court said: "The county of Nolan had no courthouse, and therefore the commissioners court had power to issue bonds for the erection of such a structure, containing all

the recitals necessary to show the authority for the creation of the debt. If a purchaser were bound to inquire into the existence of the facts which empowered the court to issue bonds to build a courthouse, and to know that the county had no courthouse, in view of the recitals upon the face of the obligations he was bound to look no further. He had the right to rely upon the truth of such recitals, and having paid value for the bonds without actual knowledge of their illegality, the county would be estopped to set up that they were not issued for the purpose for which they purported to be issued." Citing authorities. An examination of the authorities cited by counsel for the appellant from the Federal courts to sustain the estoppel in this case shows that none of them go so far as to hold that where the municipality has failed to act, where the bonds were never in fact ordered by the governing body, the municipality would be estopped. In the case of Evansville v. Dennett, 161 United States, 434, relied on by counsel for appellant for a quotation contained in Board of Commissioners v. Insurance Company, 90 Federal Reporter, 231, there were ordinances passed by the city council of the city of Evansville ordering the issuance of the bonds and the estoppel was applied only to the nonperformance of a condition precedent.

The principles governing the question are thus stated in Insurance Company v. Board of Education, 62 Federal Reporter, 778: "Where a municipal body has lawful authority to issue bonds or negotiable securities, dependent only upon the adoption of certain preliminary proceedings, and the adoption of these preliminary proceedings is certified on the face of the bonds by the body to which the law intrusts the power, and upon which it imposes the duty to ascertain, determine, and certify this fact, before or at the time of the issuing of the bonds, such a certificate will estop the municipality, as against a bona fide purchaser of the bonds, from proving its falsity in order to defeat them."

From this it will be seen that the cases cited do not apply to a case of non est factum. In the case of Hinkley v. City of Arkansas City, 69 Federal Reporter, 768, as in this, the mayor and city clerk issued the bonds without the authority of the city council; and in sustaining the decision of the Circuit Court the Federal Court of Appeals for the Eighth Circuit did so on the ground that the bonds had not been authorized by an ordinence. But it is proper to say that the court cited in support of its decision a decision made by the same court in the case of National Bank of Commerce v. Town of Granada, 54 Federal Reporter, 100, which was referred to and overruled in the subsequent case of Board of Commissioners v. Insurance Company, supra, in obedience, as the court stated, to the decision of the Supreme Court of the United States in Evansville v. Dennett, supra, quoting the following language from that case:

"As, therefore, the recitals in the bonds import compliance with the city's charter, purchasers for value having no notice of the nonperformance of the conditions precedent were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examina-

tion of the ordinances and records of the city council, whether those conditions had in fact been performed. With such recitals before them, they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the Legislature."

But, as above stated, ordinances had been passed by the city council of the city of Evansville ordering the issuance of the bonds, and. it was only as to some recitals in the ordinances actually passed which would disclose the invalidity of the bonds that the holder was not required to take notice of in view of the recital in the bonds that they had been issued in compliance with the charter. The following from the case of Clapp v. Otoe County, 104 Federal Reporter, 481, is a correct statement as to when the doctrine of estoppel will be applied:  .

"Corporations, municipal and quasi municipal bodies, and their officers, that have induced others to act to their prejudice by the issue of certificates or representations that they have performed acts which the law intrusted to them to perform, constitute no exception to this salutary rule. The recitals of the officers of a municipal or quasi municipal corporation, who are invested with the power to perform a precedent condition to the issue of negotiable bonds, or with authority to determine when that condition has been performed, that they have found that all the requirements of law necessary to authorize the issue of the bonds have been fully complied with, precludes inquiry, as against an innocent purchaser for value, as to whether or not the precedent condition challenged had been performed before the bonds were issued. City of Huron v. Savings Bank, 86 Fed. Rep., 272, 279; 30 C. C. A., 38, 45; 57 U. S. App., 593, 606; Insurance Co. v. Board of Education, 62 Fed. Rep., 778, 792, 793; 10 C. C. A., 639, 651, 652; 27 U. S. App., 244, 266, 268; School District v. Stone, 106 U. S., 183, 187; 1 Sup. Ct. Rep., 84; 27 L. Ed., 90; Town of Coloma v. Eaves, 92 U. S., 484; 23 L. Ed., 579; Commissioners v. Beal, 113 U. S., 227, 238; 5 Sup. Ct. Rep., 433; 28 L. Ed., 966; City of Cairo v. Zane, 149 U. S., 122; 13 Sup. Ct. Rep., 803; 37 L. Ed., 673; City of Evansville v. Dennett, 161 U. S., 434, 443; 16 Sup. Ct. Rep., 613; 40 L. Ed., 760. A corporation and its officers who, by the apparent legality of their obligations, have induced purchasers to buy them, are estopped from denying their validity on the ground that in some of the preliminary proceedings which led to their execution, or in their execution itself, they failed to comply with some law, rule, or statute which they might have complied with, but which they carelessly neglected. Speer v. Board, 88 Fed. Rep., 749, 758; 32 C. C. A., 101, 111; 60 U. S. App., 38, 53."

So it seems that the City of Evansville v. Dennett and other cases cited must be read in the light of the fact that the city council had issued the bonds, and the corporation and not merely the mayor and city clerk had induced others to act, and that the Federal Court of Appeals may have been right after all in National Bank of Commerce v. Town of Granada, supra. We are of the opinion that it was, and that bonds in this case are no more binding upon the city of Hempstead than a forged

negotiable promissory note would be in the hands of an innocent holder for value. We are also further of the opinion that in view of the positive language of the Constitution and the limit of taxation having been reached, the holder of the bonds was required to take notice of that fact also.

The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.