### CITY OF HOUSTON v. ED. F. DUPREE.

#### No. 2002. Decided April 6, 1910.

**1.—City—Negligence—Injury to Hired Animal—Contract.**

A city having hired a mule for work on its streets; it was injured by negligence of the foreman in charge of the work. Held, that the city was liable, irrespective of the validity of the contract of hiring under the charter of the city. (Pp. 296, 297).

**2.—City—Charter—Contract.**

Where, by the charter of a city, a commissioner was intrusted with the duty to work on its streets involving the necessary hiring of teams, a contract for such hiring, made and being carried out by him with knowledge of the mayor and council, would be presumed to be within the scope of his authority, in the absence of proof showing his action to be illegal. (P. 296).

**3.—Same.**

A provision in a city charter restricting the right of its authorities to contract for services or supplies to the city, held inapplicable to mere employment of teams by the day to work on the city's streets. (P. 296, 297).

**4.—Same.**

A provision in a city charter forbidding contracts for personal service for a stated period of time, did not make invalid the employment of a driver and team for work on the city streets, paid for by the day, though the hiring so paid for had continued for a year or more. (P. 297).

Questions certified from the Court of Civil Appeals for the First District in an appeal from Harris County.

*W. H. Wilson* and *J. E. Niday,* for appellant.—Neither the Mayor

nor any other officer of the city of Houston constitutes the city. And for the city to officially bind itself by contract there must be either an ordinance, resolution or motion of the city council authorizing the contract, or express power to enter into the terms of the contract must be given by the charter to some particular individual. Here the charter gives no authority to any officer to make contracts, but the power to contract is vested in the city as a corporate body, and therefore its contracts can only be made by action of the city council, and can only be proven by a transcript from the minutes of the council. City of Bryan v. Page, 51 Texas, 534, 536; Stubbs v. City of Galveston, 3 Wilson's Civil Cases, par. 143, p. 184; City of San Antonio v. French, 80 Texas, 578; Wagner v. Porter, 56 S. W., 560; Peck v. City of Hempstead, 27 Texas Civ. App., 80; Penn v. City of Laredo, 26 S. W., 636; City of Galveston v. Brown, 67 S. W., 156;

A contract undertaken to be made verbally with an officer of a municipal corporation without any official action thereon by the city council in authorizing or approving same is not the contract of the city, and is void and unenforcible against it. Same authorities.

The charter of the city of Houston having vested the power to contract in the city as a corporate body, and having laid down express provisions as to how any contract should be made by the city of Houston, and having in said provisions provided that no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the controller, and the expense thereof charged to the proper appropriation, etc., such provision that no contract shall bind the city of Houston unless signed by the mayor and city controller, is mandatory. And a contract made verbally in disregard of these provisions is null and void and illegal, and can not be enforced as a valid obligation of the city. Wiegel v. Pulaski County, 32 S. W., 116; Cameron's Executors v. State, 67 S. W., 360; Zottman v. San Francisco, 20 Cal., 98.

*Fisher, Sears & Campbell,* for appellee.—The court did not err in permitting the witness Dupree to testify as to the contract or agreement under which the city was using the teams and drivers, as the object was not to show any contract upon which a recovery was sought but only to show the manner in which the city was using the services of said mules and drivers. Langley v. Augusta, 118 Ga., 590; Chicago v. Norton Milling Co., 97 Ill. App., 651, affirmed in 196 Ill., 580; Norton v. New Bedford, 166 Mass., 48; Munk v. Watertown, 67 Hun, 261; N. Y. City v. Sheffield, 4 Wall., 189; Omaha v. Croft, 60 Neb., 57; Beers v. Dalles City, 16 Ore., 334; Drainage Comrs. v. Lewis, 101 Ill. App., 150, 28 Cyc., 664.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

Certified questions from the Court of Civil Appeals for the First District, as follows:

"In this case the judgment of the County Court was, at a former day, reversed and the cause remanded, and the case is now pending before this court on motion for rehearing by appellee.

"In view of the general importance, as it seems to us, of some of the questions involved, and of the fact that no appeal lies from our decision, we have deemed it proper to certify to your Honorable Court certain questions involved in the determination of this appeal.

"The following is a statement of the whole case as made by the pleadings and evidence:

"This is an action instituted in the County Court by Ed. F. Dupree against the city of Houston for damages to a mule belonging to plaintiff, and alleged to have been hired by him to the city, and which was alleged to have been hitched, by direction of the foreman in charge of the work, to a flat car loaded with gravel for the purpose of moving it a short distance, and which was injured while engaged in such work. It was alleged that the injury to the mule was the proximate consequence of the negligence of the foreman, or superintendent of the work, (1) in directing the mule to be driven where the ground was soft and unsafe, in consequence of which the mule got his foot caught under a cross tie and fell across the rail of the track in front of the moving car, and (2) in failing to have a man at the brake on said car while it was being moved to prevent its running on the mule.

"Defendant interposed the following defenses.

"First. The hiring of the mule by the street commissioner was not in accordance with the charter of the city and it was not bound by such contract.

"Second. The work in which the mule was engaged when injured was not such as the agents of the city were authorized to do, and not in rightful prosecution of the work of the city, but foreign to said work.

"Third. That the mule was in charge of plaintiff's own driver and was injured by his negligence, for which the defendant was not liable.

"The case was tried with a jury which returned a verdict in favor of plaintiff for $235. From the judgment, its motion for a new trial having been overruled, defendant appeals.

"The facts are substantially as follows: One J. B. Marmion, one of the aldermen of the city of Houston, and in such capacity in charge of the work of repairing the streets, as street commissioner, hired of appellee the mule in question with several others, for work on the streets of the city. They had been so hired for about a year before the accident in question, and engaged in work of various kinds on the streets. This hiring was by verbal contract, but was done with the consent of the mayor and with the knowledge of all of the aldermen. Dupree hired and paid the drivers of the teams, but they were put under the orders of one Cage, the foreman of the work, which they were directed to obey, and worked under his direction entirely. At the time of the accident the teams were engaged in hauling gravel from a flatcar, and distributing it upon a street which was being repaired! A car of gravel which was to be unloaded had been left at a place where it was not convenient of access to the wagons, and was required to be moved a short distance. After trying to move it by the use of pinch bars and pushing with the hands,

Cage directed the driver of one of the teams to hitch the team to it and pull it down to the place where it was desired. He directed that the mules be hitched on the right side of the car, which was done, using a chain for the purpose. The track was made of fresh earth and was soft and allowed the feet of the mules to sink in the ground, and the going was not, in fact, safe. No one was put at the brake on the car to stop it in case of accident. As the car was being moved one of the mules got his foot caught under the end of a cross-tie and fell across the track in front of the car, and was badly injured. The evidence raises the issue as to whether the accident was caused by the dangerous character of the work on account of the loose, soft ground, or the negligent way the mules were driven by appellee's driver, and also whether the injury was, to any extent, caused by the wheels of the car running against the mule's leg, or entirely by the way the mule fell across the rail. The evidence was such as to authorize a finding in favor of appellee on both issues, and also that if a man had been at the brake when the mule first fell the car could have been stopped before it reached the mule. The court in its charge submitted as the only act of negligence the causing the mules to be hitched to the car and driven over the soft, boggy ground, but by special charge, requested by appellee, instructed the jury as to the additional issues of negligence in failing to have a man at the brake, in case the jury found that the wheels of the moving car ran against the mule and partly caused the injury.

"Dupree testified as to the verbal contract with Marmion and the knowledge and consent of the mayor and other alderman, and that he had been paid in full for the hire of the mules. Marmion hired the mules at $4 a day for each team, but the mayor reduced the price to $3.75. The city of Houston has a special charter, which is a public act, with special authority to maintain and improve its streets. The following provisions of the charter are pertinent to be considered:

" 'Sec. 19.   Contracts for Services.—No contract shall ever be made which binds the city to pay for personal services to be rendered for any stated period of time; but all contracts involving a personal service shall be restricted to the doing of some particular act or thing, and upon its completion no further liability shall exist on the part of the city.

" 'Nor shall the city of Houston or any one acting for it make any contract for supplies for the current use of any department of the municipality for a longer period than ninety days, and so far as practicable, all supplies purchased for the use of any or all of the departments of said city shall be made or let upon competing prices therefor.

" 'No contract shall be entered into until after an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts, whenever practicable, shall be made upon specifications, and no contract shall be binding upon the city, unless it has been signed by the mayor and countersigned by the controller, and the expense thereof charged to the proper appropriation, and whenever the

contract charged to any appropriation equals the amount of said appropriation, no further contracts shall be countersigned by the controller.'

"The record does not contain any evidence as to the mayor's or Marmion's authority to make the contract for hire of the mules except as herein indicated.

"Upon the case as thus presented we respectfully certify to your Honorable Court the following question:

"Question 1.  Assuming that the mule was injured while employed in hauling gravel for repair of the streets, and that such injury was proximately caused by the negligence of Cage, the foreman or superintendent placed in charge of the work by the city, was the contract for the hire of the mule sufficient, under the provisions of the charter of the city Houston, to render the city liable therefor?

"Question 2.  Do the provisions of section 19, art. 2, of the charter, providing that no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the controller, apply to such a contract as this, provided the street commissioner, Marmion, had the authority to make such contract?

"Question 3.  In the absence of a valid contract of hiring of the mule, would the city be liable for the injury to the mule, assuming the facts stated in the first question?"

The entire case may be disposed of by an answer to the third question which we proceed to give.

The action is for an injury to the mule, alleged to have been suffered from negligence of one of the agents or servants of the city. If that person was acting within the scope of his authority as such servant or agent the city is liable.  He was put to doing the work of repairing a street by the street commissioner of the city, using for the purpose the mule hired by the latter from plaintiff. The work upon the street was of such a nature that it must have been known, the mule had been so used for a long time, and its hire had been paid by the city.  From these facts, unrebutted, the just conclusion is that it was within the authority of the commissioner to have the work done and therefore within the authority of the agent employed by him to do it.  The doing of it involved the employment of the labor of men and mules and the use of material. It ought not, upon an issue like this, to be assumed that all this may have been done by the commissioner, the officer or agent of the city in whose charge such work would properly be, without proper authority.  The work being of a kind apparently within the scope of his authority, if, in the particular instance, there were facts that deprived his action of the legal character which it apparently bore, the city should have shown them.  In the absence of other evidence, it should be inferred that these employes were acting for the city in their proper sphere.  The Court of Civil Appeals has held, correctly, we think, that the provisions of the charter set forth in the statement of the case do not apply to such things as the mere hiring of teams to be used in working on the streets.  No other provisions are cited prescribing any mode in which such hiring is to be done, such as that it must be by ordinance, or otherwise, by the city council.  It might well be that it is left to the agent of the

city having superintendence of the practical work of putting gravel on the streets as incidental thereto. The facts that this course had been pursued for such a length of time with the knowledge and acquiescence of the other representatives and that the hire of the mules had been paid by the city make the inference a reasonable one that it was duly authorized. The certificate does not show that there was any attempt to bind the city for the hire of the mules for any definite length of time. While the fact is that they had been hired for a year or more, they had been paid for by the day, and this is entirely consistent with the assumption that they were kept at will, as they were needed in the work, and could have been turned back to the owner at any time; a kind of arrangement that may well be inferred, in the absence of anything forbidding, to have been incidental to the duty of caring for the repairing of streets. So we see no reason for assuming an "absence of a valid contract of hiring;" but if it should be true that Marmion had made some sort of an arrangement which would not have bound the city to the contract of hiring, in our opinion that would not defeat liability of the city for an injury to the mule received through Cage's negligence while it was actually in use on the streets, for the reason we have stated, that the facts justify no other inference than that in using mules in repairing streets both Marmion and Cage were acting in the scope of their authority.

We have endeavored so to state our views as to indicate the distinction betwen this case and those relied on by counsel for the city, and regard it as unnecessary to discuss them in detail.