STATE OF TEXAS EX REL OIL OPERATORS TRUST ET AL. V.
B. H. HELLMAN, MAYOR, ET AL.

No. 5635.   Decided April 1, 1931.
(36 S. W., 2d Series, 1002.)

*Ingrum & Smith* and *W. O. Davis,* for appellants.

*Edwin M. Fulton,* for appellees.

MR. COMMISSIONER LEDDY delivered the opinion of the court.

This was a quo warranto proceeding, brought in proper form, for the purpose of determining the validity of the incorporation of the town of Muenster.   It was tried before the court without the intervention of a jury and judgment rendered declaring the incorporation valid.

The Honorable Court of Civil Appeals for the Second Supreme Judicial District has certified for the determination of the Supreme Court the following questions of law arising in the case:

"1. Was the evidence sufficient, as a matter of law, to show that the entire tract of 640 acres was incorporated by the village of Muenster as a town for strictly town purposes?

"2. Was the evidence sufficient, as a matter of law, to prove that the resolution of the town council, adopted on July 25, 1927, to incorporate as a city, was passed at a regular meeting of the town council, as required by article 961, Rev. Statutes?

"3. Was the evidence sufficient, as a matter of law, to prove that there were as many as 600 inhabitants of the town of Muenster at the time the resolution was adopted by its council to incorporate as a city, as provided in article 961?"

It is not necessary to set forth in full the certificate of the Court of Civil Appeals, as in our discussion of the questions submitted we will quote therefrom such facts as we deem pertinent to support the conclusions reached by us.

The first question presents the issue as to whether there is any evidence in the record tending to show that all the territory included within the corporate limits of the town of Muenster was intended, at the time of incorporation, to be used strictly for town purposes.

There was testimony from some of the proposed incorporators to the effect that all of the 640 acres included within the corporate limits was suitable for town purposes and intended at the time of the incorporation to be used as such. It was further shown that an oil field had been brought in adjacent to the city limits and that two or three producing wells were located within the proposed limits of the city. As a result of the discovery of this oil field the population began to increase and it reasonably appeared that the proposed city would have a very rapid growth. The court, in determining whether the amount of land included within the city limits was reasonably necessary to take care of the future growth of the city could properly consider as a matter of judicial knowledge the fact that the development of an oil field adjacent to a town is reasonably calculated to bring about a large increase in population as well as in industrial enterprises. Because of such fact it was permissible to include more unused land within the corporate limits than under ordinary circumstances would be considered sufficient to take care of the future growth of a city of this class.

In the case of State v. Hoard, 94 Texas, 527, 62 S. W., 1054, it was held by our Supreme Court that the inclusion of 205 acres of cultivated land within the territorial limits of the town of Celeste did not render the incorporation invalid, even though the land included was cultivated

land, containing no houses thereon, and was not subdivided into lots or blocks.

In Thompson v. State, 23 Texas Civ. App., 370, 56 S. W., 603, it was shown that a town having a population of less than 2,000 included within its boundaries 400 acres of agricultural land which was suitable for town purposes. The incorporation was upheld upon the trial court's finding that the land was suitable for and intended to be used strictly for town purposes.

Our conclusion is that there was some evidence to sustain the finding of the trial court that all the land included within the corporate limits of the town of Muenster was intended, at the time of the incorporation, to be used strictly for town purposes. We therefore answer the first question in the affirmative.

Article 961, R. S., 1925, authorizes the acceptance by certain cities or towns of the provisions of title 28 of the Revised Statutes by the adoption of a resolution at a regular meeting of the city council.

Appellant contends that this statute was not complied with, because the meeting at which the resolution was passed adopting the provisions of title 28 was not a regular one.

The record discloses that at a preliminary meeting of the council on April 19, 1927, it was provided by motion, duly passed, that the council should meet on the first Monday in each month at 8 p. m. without specifying any particular place of meeting. It is also disclosed that by resolution passed on June 27, 1927, the time of the meeting of the city council was changed from 8 p. m. on the first Monday of each month to 8 p. m. every Monday.

It is claimed that the meeting of June 27, 1927, at which the resolution was adopted attempting to change the regular meeting time of the council, was unauthorized, but that if such meeting was a valid one, the attempted change of meeting time was void because the resolution attempting to accomplish such purpose failed to specify the place of meeting and in addition thereto the city council did not meet on July 27, at 8 p. m., the designated hour, but at 9 p. m.

The trial court found that the meeting of June 27, 1927, was a valid called meeting and that at such time, by resolution duly adopted, the meeting time was legally changed from the first Monday in each month to every Monday.

We think the above finding of the trial court is sustained by the evidence. It is shown that the mayor notified in person every member of the city council that a special meeting would be held on the night of June 27, 1927, and also gave them the information as to the nature of the business to be transacted at such meeting.

Appellant argues that under the statute a valid called meeting could only be held by serving written notice upon each member of the council

or leaving the same at their usual place of abode. The statute requiring notice for special meetings of this character is article 1008, which provides:

"The mayor, of his own motion, or on the application of three aldermen, may call special meetings, by notice to each member of said council, the secretary and city attorney, served personally or left at their usual place of abode."

We think this statute is directory and that a substantial compliance with its provisions for notice to the members is sufficient.

The Supreme Court of Massachusetts, in construing a statute similar to the one under consideration, held that the provision for leaving notice at the place of residence of the members did not exclude service of notice on the members personally, as such form of service was most effective to accomplish the object and purpose of the statute. Russell v. Wellington, 157 Mass., 100, 31 N. E., 630. See, also, Dillon on Municipal Corporations, sec. 262-264.

It is also insisted that the resolution adopted at the special meeting on June 27, 1927, attempting to change the time of meeting of the city council is ineffective because not in compliance with article 1008, which reads as follows:

"The city council shall hold stated meetings at such time and place as they shall by resolution direct."

We do not think the failure of the resolution to fix a stated place for the meeting rendered the session in question illegal. It was shown to be the custom for the council to meet in the rear of a bank building in the town of Muenster, and it is undisputed that its meeting place was known to all the members of the council and to the general public; that frequently citizens interested in matters to be acted upon by the council appeared before them at their meetings. The council having met in its usual and customary place within the corporate limits, the meeting was a lawful one.

In Wells v. Mt. Olivet, 126 Ky., 131, 102 S. W., 1182, 11 L. R. A. (N. S.) 1080, it appeared that the charter of a city provided its trustees might meet at a place within the corporate limits, to be fixed by ordinance. No place having been fixed by ordinance, it was decided that the council might lawfully meet at some convenient and acceptable place within the corporate limits of the town.

Similarly, it was determined by the Supreme Court of Arkansas, in Harrison v. Campbell, 160 Ark., 88, 254 S. W., 438, that where no regular meeting place had been provided, the custom of the city council to meet in the mayor's office, where all the members of the council were present, authorized the passage of a valid ordinance.

Nor does the fact that the meeting did not start at 8 o'clock, the hour designated therefor, invalidate the proceedings had at such meeting. The minutes of the June 27 meeting recite that the council met at 9

o'clock, instead of 8 o'clock, the hour fixed for such meeting. The failure of the council to meet at the appointed time, as explained by the secretary, was due to the fact that some members of the council were late in arriving at the meeting place, and it was customary to delay the meeting until 9 o'clock in order that all members who desired to attend might be present. It is not shown that there was any sinister purpose or motive in holding the meeting at 9 o'clock, or that anyone interested was misled thereby. It would be the adoption of too strict a rule to hold that a meeting of a city council is illegal if it does not start exactly at the minute specified.

The holding of the meeting, under the circumstances, was a substantial compliance with the time designated in the resolution for the hour of meeting. Of course if the meeting of the council had been held before the appointed hour or at such a length of time thereafter as to operate as a surprise to those interested therein, so as to prevent their attendance at the meeting, then a different question would be presented.

We conclude that the resolution by the council on July 25, 1927, was adopted at a regular meeting of the town council. We therefore answer the second question in the affirmative.

Under the provisions of article 961, R. S., 1925, the town of Muenster was entitled to accept the provisions of title 28, R. S., 1925, if it contained 600 inhabitants or had one or more manufacturing establishments within the corporate limits.

The undisputed evidence shows that there were three manufacturing establishments within the corporate limits at the time of the adoption of the resolution accepting the provisions of title 28, to-wit: a milling company engaged in making flour, an oil refinery making gasoline and other products from crude oil, and an institution engaged in manufacturing storage batteries. Since the town had the requisite number of manufacturing institutions, it was brought within the class entitled to accept the provisions of title 28, even though its population was less than 600 inhabitants at the time the council passed its resolution accepting the provisions of said title. It is therefore not necessary that we answer the third question certified, as it affirmatively appears an answer thereto is not material to a decision of the case.

We recommend that the questions submitted be answered as indicated herein.

The opinion of the Commission of Appeals answering the certified questions is adopted, and ordered certified.

C. M. CURETON, Chief Justice.