## SOUTHLAND ICE CO. v. CITY OF TEMPLE.
### No. 8860.

Circuit Court of Appeals, Fifth Circuit.
Jan. 4, 1939.

826

Webster Atwell, of Dallas, Tex., for appellant.

W. O. Cox and W. R. Brown, both of Temple, Tex., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and DEAVER, District Judge.

DEAVER, District Judge.

The Southland Ice Company sued the City of Temple for specific performance of a contract and in the alternative for damages.

The Company was the owner of certain real estate in the City of Temple, Texas. It had used this property as an ice manufacturing plant and cold storage plant. On or about July 29, 1937, the City Manager inquired of the Company's President whether the property was for sale. Upon receiving an affirmative answer and ascertaining the approximate sale price, the City Manager called a meeting of the Board of Commissioners of the city to be held in the afternoon of that day. He called the meeting by telephoning each member of the board and four of the five members attended the meeting. At this meeting a motion was passed authorizing the City Manager to purchase the property, the consideration to be $7,500 cash, $7,500 without interest to be paid later in the year and the cancellation of taxes on the property.

Under that authority, the City Manager sent to the Company a letter dated August 5, 1937, making the offer to purchase. On August 6, 1937, the President of the Company accepted the offer and advised the city that the Company would promptly remove all insulating materials, pipes, tanks, machinery, ice and refrigerating equipment from the building. The Company proceeded to remove that property and in doing so expended the sum of $1,039.41 prior to August 25, 1937, on which date the City Manager informed the Company by letter that the city at a meeting of the Board of Commissioners repudiated the contract. To restore the property to its former condition would cost $8,600.

Defendant has owned and operated the water and sewer department of the city for many years. It has invested in the plant and distribution system approximately a million dollars and the business has been for many years conducted at an annual profit of approximately $55,000. In connection with the operation of such business defendant has had to purchase and store large inventories. The City Manager and the four Commissioners who authorized the contract had in mind the purchase of the property for use as a store-room for the protection and preservation of such inventories. These inventories were necessary to the conduct of the water and sewer department.

The authority to buy the property was granted by the four Commissioners on oral motion and not by formal resolution or ordinance. The Commissioners in the meeting discussed informally the method of payment. It was discussed as a good plan to pay half of the purchase price out of the water-works fund and half out of the general fund.

The city was operating under a budget and there was nothing set up in the budget for the purchase of the property. There was money set up to buy a street sweeper and to do some repairs on the fire station. The Commissioners had in mind to forego the purchase of the street sweeper and the repairs to the fire station and use those funds to meet the deferred payment on the

property. However, no action of any kind was taken with reference to the means or method of payment.

The city did not take possession of the property or receive any benefit from it.

Because of the repudiation of the contract, the Company brought suit for specific performance. Defendant answered that for reasons set forth the contract was void. Plaintiff amended, setting up estoppel to claim that the contract was illegal and praying for damages in the alternative.

Plaintiff announced at the beginning of the trial that it would no longer pursue the question of the remission of taxes.

The Court denied plaintiff any relief and rendered judgment for defendant. Plaintiff appealed.

Appellant, in numerous assignments of error, complains that the court erred in rendering judgment for appellee:

1. Because under the undisputed facts, the parties entered into a legally binding contract; and

2. Because, under the facts, appellee was estopped to assert mere irregularities in the action of the Commissioners in authorizing the City Manager to make the contract.

Appellee contended on the trial and contends here that the contract was illegal and unenforceable for the following reasons:

1. Because the meeting of the Board of Commissioners at which the contract was authorized was an illegal meeting.

The city charter provides as follows: "Special Meetings of the Board: The Mayor, any member of the Board of Commissioners, or the City Manager, may call special meetings of the Board at any time upon at least twelve hours written notice to each member, served personally or left at the usual place of business or residence of such member, or such meetings may be held at any time without written notice, provided all members of the board are present."

The notice given was less than twelve hours and was not given in writing, but was given by telephone, and one of the five members was not present. Appellee says the charter provision is mandatory.

Appellant quotes in part Article 1008, Texas Civil Statutes, as follows: "The mayor, of his own motion, or on the application of three aldermen, may call special meetings, by notice to each member of said council, the secretary and city attorney, served personally or left at their usual place of abode," and contends that the meeting was called in substantial compliance with that statute, and that if the charter provision be construed as mandatory, it is inconsistent with the statute and, therefore, unconstitutional under Article 11, Sec. 5, Texas Constitution, Vernon's Ann. Civ.St.

As bearing on that question, the following authorities are cited in the briefs: Mills v. City of San Antonio, Tex.Civ.App., 65 S. W. 1121; Young v. Taylor, Tex.Civ.App., 92 S.W.2d 1075; State v. Hellman, 120 Tex. 282, 36 S.W.2d 1002; Ikard v. City of Henrietta, Tex.Civ.App., 33 S.W.2d 578; Brewer v. State, 113 Tex.Cr.R. 522, 24 S. W.2d 409; Smith Bros. v. Lucas, Tex. Civ.App., 15 S.W.2d 27, affirmed Tex.Com. App., 26 S.W.2d 1055; McCutcheon v. Wozencraft, 116 Tex. 440, 294 S.W. 1105.

2. Because the city could not legally enter into the contract except upon formal resolution or ordinance. Appellee cites Watson v. City of Center, Tex.Civ.App., 286 S.W. 859; Peck v. City of Hempstead, 27 Tex.Civ.App. 80, 65 S.W. 653; Fayette County v. Krause, 31 Tex.Civ.App. 569, 73 S.W. 51.

Appellant cites City of Waco v. Prather, 90 Tex. 80, 37 S.W. 312; McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; City of Tyler v. Jester & Co., 97 Tex. 344, 78 S. W. 1058, 1059.

3. Because the contract was not signed by the Mayor.

Appellee quotes a provision in the city charter requiring the Mayor to sign all contracts entered into by the city, and says the provision is mandatory. It cites City of Houston v. Dupree, 103 Tex. 292, 126 S.W. 1115; Cameron County, etc. v. De La Vergne Engine Co., 5 Cir., 93 F.2d 373; City of Hamlin v. Brown-Crummer Inv. Co., 5 Cir., 93 F.2d 680.

Appellant says that a contract authorized by the Commissioners is valid without the Mayor's signature, and cites: City of Ft. Worth v. First Baptist Church, Tex. Civ.App., 268 S.W. 1016; Sowell v. Griffith, Tex.Com.App., 294 S.W. 521; Wilke v. City of Ballinger, Tex.Civ.App., 31 S.W. 2d 1102; City of Houston v. Dupree, 103 Tex. 292, 126 S.W. 1115.

828

4. Because a part of the consideration to be paid for the property was the remission of certain taxes against the property.

Appellee refers to the Constitution, Article 11, Sections 4 and 6, Vernon's Ann. Civ.St.Tex., and to the city charter prohibiting the payment of taxes in anything except current money or funds of the United States, and contends that the illegality of a part of the consideration renders the entire consideration illegal and the contract unenforceable, citing Edwards County v. Jennings et al., 89 Tex. 618, 35 S.W. 1053; Wicks et al. v. Comves et al., 110 Tex. 532, 221 S.W. 938.

Appellant, recognizing that the provision in the contract for remission of taxes is not valid, says that the waiver of that provision in the beginning of the trial left the contract valid and enforceable, citing Sayles v. City of Abilene, Tex.Civ.App., 290 S.W. 239, affirmed Tex.Com.App., 295 S.W. 578, and the Wicks Case, supra.

■ 5. Because the contract attempted to create a debt in violation of the state constitution and the city charter.

Article 11, sec. 5, of the Texas Constitution, Vernon's Ann.Civ.St. provides: "And no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent thereon".

Article IXb, Section 5, of the city charter provides: "Upon request of the city manager and for good cause shown, the board of commissioners may pass resolutions transferring appropriations made from one department to another department, but in no event shall the total appropriations of the city exceed the reasonably anticipated revenues of the city for that year and no debt shall ever be made by the city, unless at the same time, or prior thereto, provision be made to pay the same";

The Texas Budget Law is contained in Vernon's Annotated Texas Civil Statutes, Article 689a—1 to 689a—20 Subdivision 13 provides in part: "If a city or town in this State has already set up in its charter definite requirements which provide for the preparation each year of a budget of all expenditures of said city and a public hearing on said budget, then the charter provisions of said city as to the time of public hearings and the method of preparation of the budget shall govern, provided that when said budget has been finally prepared and approved, that a copy of said budget, together with all amendments thereto, shall be filed with the County Clerk and with the State Comptroller at Austin, Texas, the same as this Act requires other budgets to be filed."

Subdivision 15 provides: "When the budget has been finally approved by such Board of Commissioners, or Council, the budget as so approved shall be filed with the Clerk of such city, town or village, and taxes levied only in accordance therewith, and no expenditure of the funds of such city, town or village shall thereafter be made except in strict compliance with such adopted budget, except that in case of grave public necessity, emergency expenditures to meet unusual and unforeseen conditions, which could not, by reasonable diligent thought and attention, have been included in the original budget, may from time to time be authorized by such board of commissioners, or council, as amendments to the original budget."

Subdivision 20 provides: "Nothing contained in this Act shall be construed as precluding the Legislature from making changes in the budget for State purposes or prevent the County Commissioners' Court from making changes in the budget for county purposes or prevent the governing body of any incorporated city or town from making changes in the budget for city purposes, or prevent the trustees or other school governing body from making changes in the budgets for school purposes."

The constitutional provision above quoted does not apply to debts payable out of current revenues or other funds in immediate control of the city lawfully applicable thereto. McNeal v. Waco, 89 Tex. 83, 33 S.W. 322; Stevenson v. Blake, Tex.Com.App., 113 S.W.2d 525.

The city charter provision as to debt should have a similar construction.

Appellant contends that there was within the city's immediate control about $17,000 in the water-works and sewerage fund and that the Commissioners contemplated using $7,500 of that fund as the initial payment; that the city's current revenues were between $140,000 and $160,000 and that the Commissioners contemplated spending $7500.00 of that fund as final payment; that the Commissioners determined that it would be more beneficial to purchase this property for use as a storehouse

for supplies and equipment than to buy a street sweeper and repair the fire station.

■■ The city at the time of the contract did not make provision to assess and collect any tax to pay the obligation and the obligation could escape being a debt, under the constitution, only if payable out of current revenues or funds in immediate control of the city. Also, the city charter provides that no debt shall be made unless at the same time or prior thereto, provision be made to pay the same. No provision was made for the payment of this property and the obligation can escape being a debt, in violation of the charter, only if it comes within the total appropriations not exceeding the reasonably anticipated revenues for the year.

The question, under the constitution and the charter, is whether the city operating under its budget was in position to pay for the property out of funds in hand or from current revenues.

Counsel for both parties say, in their briefs, that there are no authorities construing the Budget Law.

■ Under subdivision 15 of the Budget Law, taxes are levied only in accordance with the budget, and no expenditures can be made except in strict compliance with the budget, except that emergency expenditures may be authorized by the Commissioners as amendments to the budget. Payment for this property could not be considered an emergency expenditure and it was not added to the budget by amendment. Therefore, under that subdivision, for the purposes of this case, no expenditures could be made except in strict compliance with the budget. That means that all current revenues were already appropriated in the budget.

Now, under the charter provision above quoted, if in force, the Commissioners may pass resolutions transferring appropriations from one department to another department, but must keep the total appropriations within the anticipated revenues.

■■ Counsel for appellee call attention to subdivision 13 of the Budget Law (quoted above) and say that, as to Home Rule Cities, the only provisions in their charters as to budgets, not abrogated by the Budget Law, are those relating to the preparation of the budget and hearings thereon, and that, therefore, the part of the charter as to transfers from one department to another must yield to the provisions of the general statute, under the constitution prohibiting Home Rule Charters to contain anything inconsistent with the constitution or the general laws. Whether that view be correct, it is not necessary to decide. Even if that charter provision is still in effect, it only authorizes transfer from one department of appropriations to be applied in another department to some object covered by the budget. That seems logical because subdivision 15 provides how and when new matters can be added to the budget. Therefore, appropriations, if transferred, would be applicable only to some purpose named in the budget, and could not be used to pay for property not mentioned in the budget. Likewise, subdivision 20 of the Budget Law, authorizing changes in the budget, must refer to changes within the objects covered by the budget, because if new matters could be added to the budget, then the emergency provision would serve no purpose.

■ The city had a budget. It did not include the purchase of this property or any storehouse. It took up all current revenues because no taxes could be levied except in accordance with the budget. The city could not transfer funds and apply them to a new object not mentioned in the budget, there being no emergency. All the current revenues having been already appropriated, any additional appropriation to pay for this property would have exceeded the reasonably anticipated revenues for that year. Therefore, the city had no funds or current revenues applicable to the payment of this obligation.

Even if there were power under the Budget Law and the charter to transfer funds and devote them to a new purpose not mentioned in the budget, the Commissioners, under the terms of the charter provision, could exercise that power only by passing a resolution. They passed no such resolution. They did not agree with appellant or even among themselves to pass such a resolution. There was only some informal discussion. No attempt was made to amend the budget, even if that could have been done. No action was taken by the Commissioners except to authorize the City Manager to buy the property for a named consideration. When the Commissioners met all the funds had been appropriated and, inasmuch as the Commissioners did not transfer any appropriation or amend the budget, the funds remained appropriated, and the new obligation became

a debt both under the constitution and the city charter.

 There was no estoppel. The city did not receive any benefits, so as to make it liable for the value thereof, and the city cannot be required to perform a contract creating an illegal debt or to pay damages by reason of such contract, whether it was attempting to exercise a proprietary or a governmental function.

The question decided disposes of the case and it is not necessary to consider the other questions made.

The Judgment is affirmed.