### CITY OF GALVESTON v. A. A. BROWN.

Decided February 26, 1902.

**Municipal Corporation—Unauthorized Act of Officer—Impressing Horses for Public Emergency.**

Where the mayor of Galveston, just after the great flood in September, 1900, instructed the chief of police to impress any horses he could find to be used in removing the dead and caring for the sick, and the latter had plaintiff's horses taken without his knowledge or consent, the city was not liable therefor in the absence of a showing that it had any charter power to impress personal property of any kind, or that its city council had ever in any way authorized such taking and use, since such action of the officers was beyond the scope of their authority.

Appeal from the County Court of Galveston. Tried below before Hon. John W. Campbell.

*P. A. Drouilhet*, for appellant.

*Marsene Johnson*, for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant to recover $200, the value of a horse, alleged to have been taken on the 11th of September, 1900, by the officers, servants, agents, and employes of the city without Brown's (the owner) consent, and worked to death.

The trial resulted in a verdict and judgment for plaintiff.

The facts are undisputed that, under instructions of the chief of police of the city of Galveston to secure a team any way possible, a policeman of the city, without the knowledge and consent of appellee, on the 11th day of September, 1900, took two horses belonging to him from where he had staked them out on the Ball School square and turned them over to the driver of the city's patrol wagon; and he worked them to a wagon in hauling off the sick, wounded, and dead who were suffering or had perished from the storm and flood which swept over the city on the 8th day of September, 1900.

Brown demanded the horses from the driver, who refused to give him possession of them until he had worked them night and day for six days, when he turned them over to him, completely worked down. One of them died from overwork, and was worth when taken from the appellee $200.

On account of conditions rendered by the storm, which completely paralyzed and prostrated business for nearly a month, there was no meeting of the city council during that time. But the mayor, without authority from the council, instructed the chief of police to impress horses for the purpose of using them in removing the dead and caring for the sick and wounded. This he considered necessary for the protection of the lives and health of the inhabitants of the city.

All kinds of personal property are subject to the State's power of

eminent domain (Lewis on Eminent Domain, section 263), and this power may be delegated by the State to a municipal corporation. In cases of pressing and immediate necessity, as in the event of an invasion by the public enemy, or some great calamity, this power has been exercised. But when the power is given to a municipal corporation, the taking by it must be authorized by a vote of the governing body, and this must be passed in such manner and by such formalities as are required by law. Lewis on Em. Dom., 2 ed., sec. 308, and authorities cited in note 85, pp. 761, 762.

To establish a municipal corporation's liability for the acts of its officers or agents, it is necessary to show that the acts were either expressly or impliedly authorized by it, or some branch of government having jurisdiction of the subject to which the acts relate, or that they were done, bona fide, in pursuance of a general authority to act for the corporation in the matter. A common council's powers are limited and defined by law, and it can no more transcend them than an agent in any other case can, and bind his principal beyond the scope of the authority conferred upon him. It is not liable, therefore, for acts of agents outside the scope of its powers. Except where certain functions are conferred upon it in the interest of the public at large (White v. City of San Antonio, 60 Southwestern Reporter, 426), a municipal corporation is liable for every tortious act of its agents committed by its express command or direct authorization, however unlawful the act may be, provided the act complained of was in or about a subject matter of which it had jurisdiction. Shearm. & Redf. on Neg., 5 ed., sec. 299, and authorities cited. But its liability for tortious acts of its agents extends no further.

We have been cited to no authority conferred upon the city of Galveston by its charter empowering it or its officers to impress, or take under any circumstances, the horses or personal property of another into its service or use without the owner's consent. If, however, it were shown that such power had been given it, still no authorization by the common council, the governing body of the city, of the taking and use of appellee's property has been plead or proven. On the contrary, the undisputed evidence shows that the council never in any way authorized such taking or use. The acts complained of were done by a policeman and patrol wagon driver under orders and instructions of the mayor and chief of police of the city, neither of whom were authorized by it to make such orders or give such instructions.

We do not wish to be understood as disapproving or censuring the acts of any of the parties; with them we have nothing to do except to determine whether the appellant can be held liable in damages for them. In the absence of any testimony connecting the city with the acts complained of, there is, in our opinion, no basis for any claim of liability against it. City of San Antonio v. Mackey, 36 S. W. Rep., 760; City of Dallas v. Allen, 40 S. W. Rep., 324; Dooley v. City of Kansas, 82 Mo., 444.

It appearing that the evidence was fully developed upon the trial in the court below, and it being wholly insufficient to support the verdict, the judgment of the County Court is reversed and judgment is here rendered for the appellant.

*Reversed and rendered.*