CITY OF HOUSTON v. ED. F. DUPREE.

Decided May 6, 1910.

**1.—Contract by City—City Charter—Construction.**

A city charter provided that no contract should be binding upon the city unless it was signed by the mayor and countersigned by the comptroller. Held, said provision of the charter was not intended to apply to contracts of a minor character and involving small amounts, as, for instance, the hiring of teams by the day by the street commissioner to work on the streets of the city.

**2.—Same—Repairing Street—Scope of Authority.**

Where it was not questioned that the foreman of a force of men engaged in repairing the streets of a city had the authority to haul gravel by wagons from a railroad car to the places to be repaired, such foreman would have

authority to use the teams for the purpose of moving the car to a more convenient position on the railroad track, and if the city would be liable for injury to the teams in the one case, it would be liable in the other.

**3.—Bailment for Hire—Negligence—Liability.**

Where teams were hired to a city for work upon its streets, the drivers of the teams being hired and paid by the owners of the teams but to be under the direction and control of the city's foreman, the city would not be liable for injury to the teams resulting from the negligence of the driver, though he was carrying out the orders of the foreman; but otherwise if the injury was the proximate result of the negligence of the foreman.

ON REHEARING.

**4.—City—Hired Team—Injury—Liability.**

Where a mule hired by a city for work upon its streets is injured through the negligence of the city's foreman, the city would be liable irrespective of the validity of the contract of hiring under the city charter.

**5.—Negligence—Proximate Cause—Charge.**

Upon the issue of alleged acts of negligence as proximate cause of injury, charge considered and held to sufficiently submit the issue.

Appeal from the County Court of Harris County. Tried below before Hon. A. F. Amerman.

*W. H. Wilson* and *J. E. Niday,* for appellant.—The only power possessed by the city in this case being to grade, maintain and repair its streets, the act of the foreman in undertaking to switch loaded railway cars along the switch tracks of a railway and do the work which was appropriate for a railroad switch engine, is beyond the authority of the foreman of the street work, and is *ultra vires* to any power or authority possessed by the municipal government; and for any negligence of the foreman in doing this *ultra vires* act, said foreman is himself liable, but the city can not be held liable therefor either in tort or by virtue of the terms of any alleged contract. Roughton v. City of Atlanta, 39 S. E., 316; Smith v. City of Rochester, 76 N. Y., 506; Rowland v. City of Gallatin, 75 Mo., 134; Butler v. Oxford, 69 Miss., 618; Loyd v. Mayor of Columbus, 90 Ga., 20; Spring v. Hyde Park, 137 Mass., 554-560; Cavanagh v. Boston, 139 Mass., 435, 436; Kiernan v. Jersey City, 13 Atl., 170-172; Mitchell v. City of Clinton, 99 Mo., 159; Wabaska Elec. Co. v. City of Wymore, 82 N. W., 626; Kansas City v. Brady, 34 Pac., 884.

Where an agent of the city commits a tort, even in a matter which may be within the municipal power or authority, the fact that the action was known to and directed by the mayor of the city (neither of which was the case here, as there is no evidence whatever that the mayor knew anything of the switching of cars by the street foreman) will not create liability against the municipal government unless the act done was authorized by an ordinance, resolution or other formal official act of the city council duly spread upon its minutes, as otherwise the act done is not the act of the city. City of Galveston v. Brown, 28 Texas Civ. App., 274.

Neither the mayor nor any other officer of the City of Houston

constitutes the city. And for the city to officially bind itself by contract there must be either an ordinance, resolution or motion of the city council authorizing the contract, or express power to enter into the terms of the contract must be given by the charter to some particular individual. Here the charter gives no authority to any officer to make contracts, but the power to contract is vested in the city as a corporate body, and therefore its contracts can only be made by action of the city council, and can only be proven by a transcript from the minutes of the council. City of Bryan v. Page, 51 Texas, 534, 536; Stubbs v. City of Galveston, 3 Wilson's Civ. Cases, 184; City of San Antonio v. French, 80 Texas, 578; Wagner v. Porter, 56 S. W., 560; Peck v. City of Hempstead, 27 Texas Civ. App., 80; Penn v. City of Laredo, 26 S. W., 636; City of Galveston v. Brown, 28 Texas Civ. App., 274.

The charter of the City of Houston having vested the power to contract in the city as a corporate body, and having laid down express provisions as to how any contract should be made by the City of Houston, and having in said provisions provided that no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the comptroller, and the expense thereof charged to the proper appropriation, etc., such provision that no contract shall bind the City of Houston unless signed by the mayor and city comptroller is mandatory, and a contract made verbally, in disregard of these provisions, is null and void and illegal, and can not be enforced as a valid obligation of the city. Wiegel v. Pulaski County, 32 S. W., 116; Cameron Ex'rs v. State, 67 S. W., 348, 360; Zottman v. San Francisco, 20 Cal., 98.

Where the owner furnishes his own driver, the hirer is free from liability from injury unless he takes control from the driver. 2 Cyc. Law and Proc., 132, citing Hughes v. Boyer, 9 Watts (Pa.), 556.

Where the owner lets the animal out in the charge of his own driver to do a particular job of work, he can not claim damages if the animal is injured in doing that job. 2 Cyc. Law and Proc., 212, citing Ruggles v. Fay, 31 Mich., 141.

*Fisher, Sears & Campbell,* for appellee.—The city possessed the power to grade, maintain and repair its streets, and the act of its foreman in moving a car of gravel, to be used for such purposes, to a position more convenient for unloading, was incidental to his duty and authority in maintaining and repairing said streets, and was in the scope of his authority in such respect, and was not *ultra vires* to any power or authority of the city, and the city is liable for his negligence in doing said act, and hence the court did not err in giving the charges complained of. Barree v. City of Cape Girardeau, 95 S. W., 330; City of Ysleta v. Babbitt, 8 Texas Civ. App., 432; Galveston v. Poinansky, 62 Texas, 127; Hathaway v. Osborne, 55 Atl., 700; Dooley v. Kansas City, 82 Mo., 444; Barnes v. Hannibal, 71 Mo., 449; Hunt v. Boonville, 65 Mo., 620; Stoddard v. Saratoga Springs, 127 N. Y., 261; Stanley v. Davenport, 54 Iowa, 463.

Where a team and driver is hired to another, and the driver is actually placed under the exclusive control of the hirer, the hirer is

liable for injuries resulting from the acts of servants when performing such services, and the master is not liable. 26 Cyc., 1524; Brown v. Smith, 86 Ga., 274; Kimball v. Cushman, 103 Mass., 194; Cook v. Hannibal & St. Joe Ry. Co., 63 Mo., 397.

REESE, ASSOCIATE JUSTICE.—This is an action instituted in the County Court by Ed. F. Dupree against the City of Houston for damages to a mule belonging to plaintiff and alleged to have been hired by him to the city, and which was alleged to have been hitched, by direction of the foreman in charge of the work, to a flat-car loaded with gravel for the purpose of moving it a short distance, and which was injured while engaged in such work. It was alleged that the injury to the mule was the proximate consequence of the negligence of the foreman or superintendent of the work (1) in directing the mule to be driven where the ground was soft and unsafe, in consequence of which the mule got his foot caught under a cross-tie and fell across the rail of the track in front of the moving car, and (2) in failing to have a man at the brake on said car while it was being moved to prevent its running on the mule.

Defendant interposed the following defenses:

First. The hiring of the mule by the street commissioner was not in accordance with the charter of the city, and it was not bound by such contract.

Second: The work in which the mule was engaged when injured was not such as the agents of the city were authorized to do, and not in rightful prosecution of the work of the city, but foreign to said work.

Third. That the mule was in charge of plaintiff's own driver and was injured by his negligence, for which the defendant was not liable.

The case was tried with a jury which returned a verdict in favor of plaintiff for $235. From the judgment, its motion for a new trial having been overruled, defendant appeals.

The facts are substantially as follows: One J. B. Marmion, one of the aldermen of the City of Houston, and in such capacity in charge of the work of repairing the streets as street commissioner, hired of appellee the mule in question, with several others, for work on the streets of the city. They had been so hired for about a year before the accident in question, and engaged in work of various kinds on the streets. This hiring was by verbal contract, but was done with the consent of the mayor with the knowledge of all the aldermen. Dupree hired and paid the drivers of the teams, but they were put under the orders of one Cage, the foreman of the work, which they were directed to obey, and worked under his direction entirely. At the time of the accident the teams were engaged in hauling gravel from a flat-car and distributing it upon a street which was being repaired. A car of gravel which was to be unloaded had been left at a place where it was not convenient of access to the wagons, and was required to be moved a short distance. After trying to move it by the use of pinch-bars and pushing with the hands, Cage directed the driver of one of the teams to hitch the team to it and pull it down to the place where it was desired. He directed that the mules be hitched on the right

side of the car, which was done, using a chain for the purpose. The track was made of fresh earth and was soft, and allowed the feet of the mules to sink in the ground, and the going was not, in fact, safe. No one was put at the brake on the car to stop it in case of accident. As the car was being moved one of the mules got his foot under the end of a cross-tie and fell across the track in front of the car and was badly injured.

The evidence raises the issue as to whether the accident was caused by the dangerous character of the work on account of the loose, soft ground, or the negligent way the mules were driven by appellee's driver; and also whether the injury was to any extent caused by the wheels of the car running against the mule's leg, or entirely by the way the mule fell across the rail. The evidence was such as to authorize a finding in favor of appellee on both issues, and also that if a man had been at the brake when the mule first fell the car could have been stopped before it reached the mule. The court in its charge submitted as the only act of negligence the causing the mule to be hitched to the car and driven over the soft, boggy ground; but by special charge, requested by appellee, instructed the jury as to the additional issue of negligence in failing to have a man at the brake, in case the jury found that the wheels of the moving car ran against the mule and partly caused the injury.

Dupree testified as to the verbal contract with Marmion, and the knowledge and consent of the mayor and other aldermen, and that he had been paid in full for the hire of the mules. Marmion hired the mules at $4 a day for each team, but the mayor reduced the price to $3.75. The City of Houston has a special charter, which is a public Act, with special authority to maintain and improve its streets. The following provisions of the charter are pertinent to be considered:

"Section 19. Contracts for Services.—No contract shall ever be made which binds the city to pay for personal services to be rendered for any stated period of time; but all contracts involving a personal service shall be restricted to the doing of some particular act or thing, and upon its completion no further liability shall exist on the part of the city. Nor shall the City of Houston or any one acting for it make any contract for supplies for the current use of any department of the municipality for a longer period than ninety days, and so far as practicable all supplies purchased for the use of any or all of the departments of said city shall be made or let upon competing prices therefor.

"No contract shall be entered into until after an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts, whenever practicable, shall be made upon specifications, and no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the comptroller, and the expense thereof charged to the proper appropriation, and whenever the contract charged to any approprition equals the amount of said appropriation, no further contracts shall be countersigned by the comptroller."

The assignments of error present the following questions. We state them in their logical order:

First. The contract under which the street commissioner hired the mules not having been authorized by the board of aldermen, and not having been executed in accordance with the requirements of the charter, was not binding upon the city, and therefore the city was not liable for the injury to the mule caused by the negligence of Cage.

Second. The act of Cage in moving the car of gravel was beyond the scope of his employment as agent of the city, and therefore the city was not liable.

Third. The mule was injured by the negligence of the driver, who was an employe of appellant Dupree, for which the city is not responsible.

In support of its contention that the contract of Marmion was not binding upon the city, appellant cites City of Bryan v. Page (51 Texas, 534); City of San Antonio v. French (80 Texas, 578); City of Galveston v. Brown, 28 Texas Civ. App., 274 (67 S. W., 156), and other cases, which announce the doctrine that an officer of a municipal corporation can not bind the municipality by a contract, although made in its name and for its benefit, unless the authority to make such contract is conferred by the charter or by ordinance authorized by the charter.

The charter of the City of Houston confers upon the city—the corporate entity—the power to contract and be contracted with, and this power must be exercised by the governing body by whatever name called, or by its authority, evidenced in the manner prescribed by the charter. In the present case it was not shown that Marmion, or the mayor, or any one or all of the members of the board of aldermen, were authorized by ordinance or by any other act of the board of aldermen to make the contract with appellee, or any other contract of like kind. It was not shown that the work of repairing the streets in which the teams were engaged was authorized by the board of aldermen. In fact, for all that appears from the record there was no more authority from the City of Houston for the act of Marmion and the mayor than there was for the mayor of Galveston in impressing the horses of Brown for the use of the city in the case of City of Galveston v. Brown, *supra.* It was held in that case that the city, by virtue of its governing board, had the authority to impress the horses, but this power could not be exercised by the mayor so as to be binding upon the city unless so exercised by express authority of some ordinance or other official action of the board of aldermen; and hence it was held that the city of Galveston was not liable for the negligence of the driver of the horses, which were killed by being overdriven. The result would have been the same if the mayor had hired the horses instead of forcibly taking possession of them, if he had no express authority to hire them. We think the cases cited fully sustain appellant's contention.

It can not be said that because this is not a suit upon such contract for hiring, but for a tort, it was not necessary to prove the contract. Except through some contractual relation between the City of Houston and appellee, the city could not be made liable for the negligence of Cage, the foreman of the work for the city. If the contract of Marmion and the mayor was not the contract of the city, the

case is not different from what it would have been if Marmion had seized and impressed the teams, as the mayor of Galveston did Brown's horses, and the City of Houston would have been no more liable in the one case than the other.

If Marmion or the mayor had been shown to have been authorized to hire the mules by any official act of the board of aldermen, as distinguished from the act of the individual members of the board, we do not think that it would have been necessary that the contract of hiring should have been in writing, signed by the mayor and countersigned by the comptroller, as provided by section 19, article 2 of the charter. We do not think that this section of the charter, notwithstanding its broad language "that no contract shall be binding upon the city unless it has been signed by the mayor and countersigned by the comptroller," was intended to apply to contracts such as this. We think this broad language must be limited by the context of the entire section, and, thus interpreted, should not be held to apply to such a contract, if the street commissioner and the mayor or either of them was properly authorized to make such contract. For instance, if by ordinance the street commissioner or the mayor, or both of them, was authorized to improve the street, and such ordinance, either expressly or by necessary implication, conferred the authority to hire teams to haul gravel or do other like work, we do not think that a contract for such hiring would require, in order to bind the city, that it be in writing and signed by the mayor and countersigned by the comptroller. It was not the intention of the Legislature that these provisions of section 19 should apply to contracts of this character. If appellant's contention be sound in the interpretation and application of these provisions of the charter, it would result that the mayor and street commissioner, although authorized by the board of aldermen by proper ordinance, could not make a valid contract for a load of gravel, a foot of lumber or a day's labor, unless such contract was reduced to writing and signed by the mayor and countersigned by the comptroller, and a specific appropriation made to pay the same.

We think there is no merit in appellant's second contention that the moving of the car of gravel to a point where it could be reached by the wagons for unloading was beyond the scope of Cage's duty and employment as agent of the city. Such work was as much a part of the work of moving the gravel as the hauling of the same by the wagons. Certainly it was as much in the scope of Cage's work, in removing the gravel and placing it upon the streets, to employ the teams engaged in the work in moving the car, as it would have been to do the work by the use of pinch-bars in the hands of the laborers or by pushing the same. If appellant's contention be sound, Cage could not properly, as a part of his work for the city, have moved that car at all by any means, but must have waited until an engine was sent by the railroad company to do so, though the distance to be moved be ever so short. The car could have been moved by pushing and with pinch-bars, but the mules were used as a more expeditive means.

The evidence establishes that the drivers of the mules were hired and paid by appellee, but that they were to be under the direction and control of Cage and subject to his orders. We think the trial court

in its charge took the proper view of the question arising upon these facts as affecting the liability of appellant; that is, that if the mule was injured by the negligence of the driver or his manner of driving the team while carrying out the directions and orders of Cage, appellant would not be liable, but otherwise if the injury was the proximate result of the negligence or want of ordinary care of Cage in directing what was to be done.   The evidence was sufficient to authorize the finding that the mule was injured as the proximate result of the negligence of Cage in directing the mules to be driven over the soft ground and across the cross-ties, as they were, and also in failing to have a man at the brake.

We think the trial court erred in refusing to give the charge requested by appellant as set out in the fourteenth assignment of error. The court submitted in the general charge the issue of negligence of Cage in directing the mules to be hitched to the car and driven as they were, as the proximate cause of the injury.   A special charge was given at the request of appellee, submitting the issue of Cage's negligence in failing to have a man at the brake of the moving car.   Appellant requested the court to instruct the jury that if they found that the car did not run upon the mule or injure him, but the injury was wholly caused by his getting his foot caught under the cross-tie and falling across the rail, they should disregard any evidence about a man not being at the brake.   There was evidence tending to show that the wheel of the moving car, if it touched the mule's leg at all, did not injure him, and that the injury was caused entirely by his falling across the rail and twisting his leg.   In such case the negligence of Cage, if he was negligent, in failing to have a man at the brake of the moving car before the mule fell would have had nothing to do with the injury, and appellant had a right to have the jury so instructed.   The evidence strongly tended to show that the injury to the mule was not affected by the car running upon him.   He got his foot caught under a cross-tie on the outside of the car rail and fell across the rail, remaining in this position until his foot was released by cutting away the end of the cross-tie under which his foot was caught.   As soon as the mule fell one of the men jumped to the brake of the car and stopped it just as the wheel reached the mule's leg. This is evidently the view taken of the evidence by the trial court, as shown by the omission from the main charge of the issue of negligence of Cage in failing to have a man at the brake.   In such state of the evidence, we think the requested charge should have been given, in order that the jury may have clearly understood that, if the injury was not caused by the car running upon the mule's leg, and Cage was not negligent in directing that the mule be hitched to the car and driven for the purpose of hauling it to the place needed, appellant would not be liable.

For the error of the trial court in overruling appellant's motion for new trial on the ground that appellee was not shown to have had any contract with the city for the hire of the mules, in that no authority was shown in Marmion or the mayor to make such contract, and in refusing the requested charge referred to, the judgment must be reversed and the cause remanded.

We have examined all the assignments of error and the various propositions thereunder, and, except in the particulars herein indicated, they are severally overruled.

### ON MOTION FOR REHEARING.

At the last term of this court judgment was rendered in this case reversing the judgment of the trial court and remanding the cause. For full statement of the case, see report of that case not yet published. Subsequently, on motion for rehearing, the main question in the case, upon which the judgment had been reversed, was certified to the Supreme Court, and on April 6, 1910, we were advised by that court, in answer to said question, that we were in error in our conclusion that the city was not liable for damages to the mule under the facts stated. (City of Houston v. Dupree, 103 Texas, 292.)

We also held that there was error in refusing the special charge asked by appellant to the effect that, in the event the jury found that the injury to the mule was not caused by the wheel of the car running upon the mule's leg, the evidence about a man not being placed at the brake on the car should be disregarded. Upon further consideration we have concluded that the judgment should not be reversed upon this ground alone.

The special charge given at the request of appellee submitting the issue of negligence in this respect, which we considered rendered it proper that the charge requested by appellant should have been given, has been carefully re-examined. It authorized the jury to find for the plaintiff on this issue only in case they found that the failure to put a man at the brake directly caused the injury to the mule. Under this instruction the jury could not have regarded the evidence on this issue, unless they found that the cars ran upon the mule's leg. In such case if the refusal of the requested charge was error at all, it could not have operated to the prejudice of appellant.

The motion for rehearing is granted. Finding no reversible error the judgment is affirmed.

*Affirmed.*