**CITY OF SAN ANTONIO v. HUMMEL.**

No. 10421.

Court of Civil Appeals of Texas.

San Antonio.

June 28, 1939.

Rehearing Denied Dec. 30, 1939.

T. D. Cobbs, Gus C. Garcia, and Victor Keller, all of San Antonio, for appellant.

Marcus W. Davis and Hill & Uhl, all of San Antonio, for appellee.

SLATTON, Justice.

This is an appeal from a judgment rendered in favor of Charles E. Hummel against the City of San Antonio, in the 45th Judicial District Court of Bexar County, for the sum of $1,200.

The theory of recovery was damages to property claimed in virtue of changes made by the City of San Antonio in the street and sidewalk upon which Hummel's property abutted. The trial was to the court without a jury. The trial court filed findings of fact and conclusions of law.

The City attacks the findings of the trial court as being without support in the evidence. It urges the proposition that the City, being limited by the provisions of its Charter, acts of its officers or agents must be in accordance with such provisions in order to bind the City on said acts or the consequences resulting therefrom.

Hummel contends by his second proposition that the evidence showing that after the widening of the paved portion of the street, it was necessary to lower the sidewalk in controversy, that the City's engineer and street superintendent were on the ground, and the sidewalk being in fact lowered, the trial court was justified in concluding that it was lowered by authority of the City, it being a matter exclusively within its jurisdiction.

A determination of the question thus presented settles this appeal.

We have carefully considered the evidence pointed out in the briefs of the parties and have concluded that the same does not support the findings of the trial court and the judgment rendered thereon. We quote from appellee's brief the evidence upon which he relies:

"W. W. Toxey, Assistant City Engineer, testified upon direct examination to the following:

"Q. Mr. Toxey, what if anything, was done or stated by you in regard to the approval or disapproval of the plans for lowering of that sidewalk from its proper level to the one now existing? A. Well, the best was, I believe, that I could state that would be, I believe when we widened the street it was a direct raise because the street was—

"The Court: A little bit louder; when you what?

"The Witness: When we widened the street.

"The Court: Widened it? A. Yes, sir, widened, the curb out, and when this was done it was a direct rise from the sidewalk to the curb, it was impossible, you couldn't go up there, you may say, so then Mr. Collins who was superintendent of the paving for the City, as best I remember, he took this matter up with Mr. Steffler to see if something couldn't be done because the proportions were in bad shape.

"Q. Mr. Toxey, I will ask you whether or not, before it was lowered, you were apprized of what was proposed to be done with reference to the lowering, knew it was going to be lowered or there was a discussion with reference to the lowering, you knew that? A. Yes, sir.

"Witness Toxey further testified upon cross examination by appellant as follows:

"Q. About when was it you went out there with reference to the progress of the undertaking there? A. I believe the sidewalk was built and the curb was in construction. I cannot remember for sure about that, the curb was in construction, we had arranged that, and the curb was too abrupt to the sidewalk, it was an abrupt offset.

"Q. Now, you mentioned before that caused an offset there; is that correct? A. Yes, sir.

"Q. About what offset did it leave there when the street widening was completed? A. About twenty-four to twenty-seven inches.

"Q. From twenty-four to twenty-seven inches? A. Yes, sir.

"Q. Then it was when the other work was done, is that correct? A. Yes, sir.

"The witness Toxey further testified upon cross examination propounded by the appellant as follows:

"Q. Now, referring back to this exhibit 1, and keeping in mind your statements that there was an offset there originally when the work on the street was completed, just show the court what you mean by that offset and where it existed. Just show the court. A. If you don't mind, I can draw this better.

"Mr. Nass: All right.

"The Court: Mr. Sheriff, just clear that board, please, and give him a piece of paper.

"The Witness: May I talk as I draw?

"The Court: Yes, sir.

"The Witness: I would like to represent it as I go along. We will say here is the street, as it existed (illustrating), and on the side of the street there was a curb. Now that distance, from curb to curb, that distance is twenty-seven feet (illustrating).

"The Court: Speak out pretty loudly, Mr. Toxey.

"Mr. Nass: Yes, sir, and speak out so the stenographer can hear.

"The Court: You will have to speak louder, Mr. Witness, so the counsel can hear, the stenographer, and so I can hear.

"The Witness: The distance from the face of the curb, to the face of the curb here (indicating) was twenty-seven feet, then we widened that street to thirty-seven feet, no thirty-nine feet, which is twelve feet, a twelve foot widening, being six feet on each side. Leveling this curb back, carrying the same grade, establishing another curb here (indicating) and on the other side, the distance from there to there (indicating) would be six feet, Now,—

"Q. Draw it on the other side too, please, Mr. Toxey so as to give the Court the entire background. A. That will make a total from the face of the curb to the face of the curb thirty-nine feet, now then,—I am not certain, Judge, whether there were three steps or two steps. This is the best I can remember. I would like to write on here this is the section opposite the store building (illustrating).

"Q. Now, is that the Hummel store building? A. Yes, sir.

"Q. All right. A. Then, there was a rise here—may I refer to that picture?

"Q. Sure, this one? (Passing picture to witness) A. Yes, that would be the front of the store,—of the store room. Then on the other was a platform or vestibule that went in here to the store room (indicating). There was a main floor of the store. Now, Judge, when we took this back through here (indicating), cut out of the curb, we had to have some cut out for the curb because of the building and then there was a job, which was something like that (indicating) up to this wall. That was some twenty-four inches, as I remember. Now, under those conditions, if an automobile drove up to there they could not get into the store, they couldn't get on the sidewalk. Well, that is the condition of the store that existed at the time. Now, there was a rise, a certain, amount, say a quarter of an inch to a foot on a slant here (indicating). You see, this is a fifty-six foot street, and a thirty-nine foot roadway would give you eight feet three from there to the property line (indicating), a quarter of an inch to a foot. However, I think the wall was put out back of the property line, the back of the wall. The City usually does not put anything out on the street. In other words, this fifty-five, six on the street was in the clear. This wall was still on a quarter of an inch to the foot, it would slant (illustrating) to the store. That is usually our rules and regulations.

"Q. According to the sidewalk ordinances? A. Yes, sir, we are supposed to do that.

"Q. All right. A. Then, this wall, if I remember, was put on right there (illustrating). Here is another thing I would like to bring in here, eight foot three, parking and sidewalk ordinances, shows the sidewalk shall be four feet and one foot for the property, that would make it five feet from the property line out to the line there (indicating). When that condition existed it was a case then of getting up to the level of the floor. We did that by going into the vestibule. That is all.

"The witness further testified upon cross-examination, by appellant as follows:

"Q. Why was that sidewalk condition changed out there, Mr. Toxey? A. I know it was changed for this reason, you couldn't get from the curb, twenty-four inches is a pretty long step, and the only way you could get from the step to the sidewalk, you would have to take the step. It is a pretty dangerous condition to let the

sidewalk stay up there that way; that is my way of looking at it."

It does not appear in the record before us that the acts related by the assistant city engineer were authorized by the City of San Antonio. Neither does it appear that the acts related by the assistant city engineer were performed by agents of the City within the course of their employment. For aught that appears in this record the acts related by the engineer may have been performed by the parties for their own benefit or for others, other than the City of San Antonio.

Upon the following authorities we hold that Hummel failed in his proof: Denison & P. S. Ry. Co. v. James, 20 Tex.Civ.App. 358, 49 S.W. 660; City of Dallas v. Beeman, 12 Tex.Civ.App. 344, 34 S.W. 340; City of Galveston v. Brown, 28 Tex.Civ. App. 274, 67 S.W. 156.

It follows that the trial court erred in his findings and in rendering judgment against the City. On account of such errors the judgment will be reversed and the cause remanded for another trial.