STATE OF TEXAS V. L. W. TEAGUE ET AL.

Decided May 2, 1908.

**1.—Liquor Dealer's Bond—Signature of Principal.**

The collection of penalties for violation of a liquor dealer's bond in local option territory, can not be enforced when the bond is not signed by the principal; and this, though the bond was delivered by the principal in person to the county judge, and his approval secured.

**2.—Same—Statutory Bonds—Construction.**

In a suit for a penalty upon a statutory bond neither the principle of estoppel, nor the rule of equity, which regards that as done which ought to have been done, has any application.

Appeal from the District Court of Gregg County. Tried below before Hon. R. B. Levy.

*J. H. McHaney,* County Attorney; *Edwin Lacy* and *E. M. Bramlette,* for appellant.—In order to bind a party to a written contract

or agreement it is not necessary that his signature should appear at the end of it, so far as his liability is concerned. If he writes his name in any part of the agreement, or if written by another and he adopts it as written, it may be taken as his signature if it was done for the purpose of giving authenticity to the instrument and thus operating as a signature. Batts' Civil Stat., art. 5060j, 1132; Fulshear v. Randon, 18 Texas, 277; Newton v. Emerson, 66 Texas, 142; Crawford v. State, 31 Texas Crim. App., 51; Lawson v. Dawson, 21 Texas Civ. App., 361; Taylor v. State, 16 Texas App., 514; McHowell v. State, 53 S. W., 630; State v. Hill, 66 N. W., 548; McLeod v. State, 69 Miss., 221, 13 So., 268; Hall v. Lafayette Co., 69 Miss., 529, 13 So., 268; Bartlett v. Drake, 100 Mass., 175; Clough v. Clough, 73 Me., 488; Nye v. Lowry, 82 Ind., 320; Willis v. Lewis, 28 Texas, 185.

A liquor dealer's bond is statutory, and a substantial compliance with the statute is all that is necessary; but it will be construed so as to carry into effect the intention of the parties if fairly ascertainable from the terms of the obligation. Batts' Civil Stat., art. 5060j, 1132; Johnson v. Erskine, 9 Texas, 1, and authorities there cited; Meador v. Adams, 33 Texas Civ. App., 167; State v. Harper & Crow, 86 S. W., 920, 85 S. W., 294 (dissenting opinion); Howse v. Maxwell, 157 Mass., 333, 32 N. E., 152; Leonard v. Speidel, 104 Mass., 356; Starr v. Blatner, 76 Iowa, 356, 41 N. W., 41; Dowiat v. People (Ill.), 61 N. E., 1059.

Where, in a bond, the name of a principal is recited in the body of it, but he neither signs nor seals it, his sureties who do execute it are liable. State of Ohio v. Bowman, 10 Ohio, 445; Bollman, Sheriff, v. Pasewalk, 36 N. W., 134; St. Louis Brewing Association v. Hayes, 97 Fed. Rep., 861; Williams v. Marshall, 42 Barb., 524; Parker v. Bradley, 2 Hill, 584; Scott v. Whipple, 5 Greenl., 336; Keyser v. Keen, 17 Pa. St., 327; Johnson v. Weatherwax, 9 Kan., 75; State v. Peck, 53 Me., 284; Tillson v. State, 29 Kan., 452; State v. Peyton, 32 Mo. App., 522.

*M. L. Cunningham* and *Young & Stinchcomb*, for appellees.—The defendant, L. W. Teague, the principal named in the bond, did not execute it by signing it at the end thereof; he did not sign his name in any part of the same; he did not request or authorize anyone else to write his name therein; he did not adopt it as written, or do any act for the purpose of giving authenticity to the instrument as his act; therefore the bond was not a valid obligation against either of the defendants, and the court committed no error in excluding it from the jury. Price v. State, 12 Texas Crim. App., 237; Wallen v. State, 18 Texas Crim. App., 414; Hillman v. Mayher, 85 S. W.; 818; Board of Education v. Sweeney, 36 Am. St. Rep., 767; Johnston v. Kimball Township, 33 Am. Rep., 372; People v. Hartley, 82 Am. Dec., 758; Bunn v. Jetmore, 35 Am. Rep., 425; Gay v. Murphy, 56 Am. St. Rep., 496; Cutler v. Roberts, 29 Am. Rep., 371.

The suit being upon a statutory bond for penalties provided by the statute, there should be a strict construction of the statute on which the suit is based, and the testimony introduced by the appellant failing to show that the bond was executed by the principal as required by the

statute, the court committed no error in excluding the bond from the jury. Hillman v. Mayher, 85 S. W., 818; Johnson v. Erskine, 9 Texas, 1.

Before the terms of the bond can be considered and liberality extended toward the construction of the bond, or to the statutes relating thereto, it must be proved that the bond was executed by the principal, which was not done in this case. People v. Hartley, 82 Am. Dec., 758.

The statute upon which this suit is based required the plaintiff to enter into a bond with sureties, therefore before any liability could attach, based on the bond, the principal had to actually execute the bond with his sureties. Sayles' Civil Statutes, article 5060j; 3 Words & Phrases, 2408; Douthit v. Mohr, 18 N. E., 449; Board of Education v. Sweeney, 36 Am. St. Rep., 769.

PLEASANTS, CHIEF JUSTICE.—This is a suit in the name of the State of Texas for the use and benefit of Gregg County brought by J. H. McHaney, county attorney of said county, against L. W. Teague, as principal, and H. S. Knight, J. W. Watt, H. L. Smith and A. A. Batson, as sureties, upon a bond given by Teague as a liquor dealer in a county in which the sale of liquor, except for medicinal purposes, was prohibited under the law.

The petition alleges ten breaches of the bond by Teague in making sales of liquor upon illegal prescriptions and prays for the recovery of penalties amounting to $2500. The sufficiency of the petition is not questioned.

The defendants answered by general denial and the following special pleas:

"Specially answering the defendants say that a substantial compliance has been made with all the conditions and requirements in said bond.

"That if the said bond referred to in plaintiff's petition was delivered or presented to the County Judge of Gregg County on October 17, 1905, or thereabout, the said bond was an unfinished document and invalid as an obligation against any of these defendants, in that it was not signed by the principal, and that there was no agreement between the defendant, L. W. Teague, and the other defendants, that the said bond should be delivered to the County Judge without first being executed by the said L. W. Teague; and that there was no agreement between the County Judge and the said defendants that it should be delivered without being first signed by the said L. W. Teague. And that the bond showed upon its face that it was an unfinished instrument of writing and not valid at the time it was delivered. And that if it was ever signed by the said L. W. Teague, it was not until about the 5th day of July, 1906, and was then executed by him without the knowledge of the said sureties, and without any agreement on the part of the said defendants that it should be a valid obligation against them for any breach thereof occurring prior to the date that the signature of the principal was affixed thereto.

"Further specially answering the defendants say that at no time prior to July 5, 1906, were they obligors on the bond set out in plaintiff's petition, and that the transactions upon which this suit is brought

are alleged to have occurred prior to that date and did occur prior to that date."

After hearing the evidence upon the issue of the execution of the bond by the principal Teague and the date upon which he signed same, the court sustained objections of the defendants to the introduction of the bond in evidence and instructed the jury to return a verdict in favor of defendants, and upon the return of such verdict rendered judgment in accordance therewith.

The evidence shows that on October 17, 1905, Teague filed with the county clerk of Gregg County an application for a license to engage in the sale of intoxicating liquors in the town of Longview, in said county. This application was prepared in conformity with the statute on such subject, and was sworn to by Teague. The application recited that Teague intended to commence the business of liquor dealer on October 20, 1905. On the day last named Teague presented to the clerk his tax receipts and bond and procured his license. This bond had been approved by the County Judge, but had not been signed by Teague. The fact that the bond was not signed by Teague was not discovered until July 3, 1906, when the clerk took it from his files for the purpose of recording it. As soon as the discovery was made the clerk took the bond to the County Judge and called his attention to the fact that it was not signed by Teague. Thereupon the County Judge took the bond to Teague and requested him to sign it, which he did, stating that he thought he had signed it. None of the sureties upon the bond knew that it was not signed by Teague when it was approved by the County Judge and filed with the clerk, and none of them knew that Teague signed it on July 3, 1906, or agreed that he might execute it on that day as of the day of its approval. All of the breaches of the bond for which penalties are sought to be recovered in this suit occurred prior to the 3d day of July, 1906. The testimony as to the delivery of the bond and its approval by the County Judge and the subsequent signing of same by Teague is as follows:

Edwin Lacy testified as follows: "On, and prior to, October 17, 1905, I was County Judge of Gregg County, Texas, and have been such from that time up to the present. On or about October 17, 1905, Mr. L. W. Teague came to me with a liquor dealer's bond for my approval. When he first presented me with this bond he had for his sureties H. S. Knight, J. W. Watt and H. L. Smith. I told him I would not approve it because his sureties were not sufficient, and I told him that he would have to obtain another surety. He then asked me if I would approve it with A. A. Batson as surety on it, and I told him I would. In one or two days thereafter he again came to the courthouse and presented to me the bond which is sued on herein and I looked at it and saw A. A. Batson's name additionally thereto as a surety. I thereupon approved same. On or about July 3, 1906, I discovered that L. W. Teague had never signed this bond at the bottom, whereupon I took the bond and went to his place of business and told him that his name was not signed thereto, and that I wanted him to sign it, as his failure to do so might get him and me into trouble. He said to me that he thought he had signed it, and thereupon signed

his name and gave it back to me, stating that he did not want to get either of us into any trouble."

L. W. Teague testified as follows: "I am one of the defendants in this case. When I first saw this bond here presented to me was when I received it from the hands of either J. W. Watts or H. S. Knight, I can't remember which. I did not read it, and did not know what it contained. I did not know who wrote it out. I did not write it out, nor did not tell anyone to write it out for me. I did not write my name in the middle of the bond, nor authorize anyone to write it for me. I did not know that it was written there. I do not know who wrote it there. I did not get the sureties to sign this bond. When I received this bond from either J. W. Watts or H. S. Knight I carried it to the County Judge. This was several days before October 17, 1905. I handed the County Judge the bond, and he looked it over and said to me that it would not do, and that he could not approve it because the sureties were not sufficient. I asked him if A. A. Batson signed it would he be satisfied? On the 17th day of October, 1905, afterwards I again handed this bond to the County Judge and asked him if it would do, and the County Judge then took it and marked it and said I could go ahead and get my license, and that he approved it. I then went to D. Shaw, the county clerk, and made application for license and showed him the bond and he wrote out an application and I signed and swore to it before him. I saw the clerk write out the application and I signed it, but I did not understand it and paid no attention to what was in it. The clerk issued to me a license to sell whisky. I began selling whisky on prescription as soon as I got this license, which was on October 20, 1905. About July 3, 1906, or thereabouts, the County Judge brought this bond to me at my place of business and told me that he had discovered that I had not signed the bond, and that he wanted me to sign it, and to say nothing about it as it might get both him and me in trouble. I told him I thought I had signed it and would not say anything about it if he would not, and thereupon I signed it and handed it back to him. I filed with the district clerk all the prescriptions that were filled by me or turned over to me at my place of business. Each time I filed these prescriptions I made an affidavit and filed with them. These were marked 'cancelled' by me.' Sometimes I cancelled prescriptions that I did not fill. I do not recollect selling liquor on any of the prescriptions shown me, and do not recollect that any liquor was sold on them or not. I had several persons at times working for me during the times. This is the only bond I ever handed the County Judge, and is the only bond about this case. I don't know what my intentions were in presenting this bond to the County Judge, except that I just wanted to satisfy the County Judge, and I supposed he was. I do not know whether I intended to give such a bond as was required by law or not. I was satisfied with the bond as prepared and made no objections to same, and wanted to do what was necessary to get into business. I did not know the requirements of executing a bond, and did not understand the manner of making application and bond to sell liquor. I did not read any of these papers, and I did not know what was contained in any of these papers, and have never seen the face of this bond and

did not know my name was written in the bond, except that I have been told so. I asked the County Judge if I could sell less than a quart on prescription, but do not know from whom I learned I had to file these prescriptions with the district clerk. I have paid State, county and occupation tax. I never said anything to either of the other defendants about this bond not being signed by me until July 3, 1906, until after this suit was filed. They did not agree for me to sign it at the time it was signed, none of them were present and neither of them knew anything about it. Neither of the other defendants approved my actions in signing the bond when it was signed, and neither of them agreed to it. Neither of them knew anything about it until after the suit was brought."

The sale of intoxicating liquor, except upon the prescription of a physician, was prohibited in Gregg County as a result of an election held under the local option laws of this State, and the bond in question was authorized under the law.

The only question presented by this appeal is, whether the trial court erred in holding that the bond sued on, not having been signed by the principal at the time the acts complained of by appellant were committed, the appellant was not entitled to recover penalties fixed by statute for a breach of the conditions of said bond.

We think the authorities support the holding of the trial court. The evident intention of Teague and his sureties having been that the former should do whatever was necessary to obtain a license to sell intoxicating liquor in Gregg County, if any common law liability would arise from a breach of the bond, a suit for damages for such breach might be maintained, but the cause of action asserted is not one that arises from a common law liability. It is a suit to enforce a penalty for the violation of the conditions of a statutory bond and in such cases the cause of action does not exist unless the bond is in conformity with the provisions of the statute requiring its execution. The statute, article 5060j, Rev. Stats., requires that a bond of this character shall be entered into by the principal, and this requirement is only met when the bond is signed by the principal or by some one authorized by him to sign his name thereto. In a suit for a penalty upon a statutory bond of this kind neither the principle of estoppel nor the rule of equity, which regards that as done which ought to have been done, has any application. Unless the bond sued on has been executed in substantial compliance with requirements of the statute it is invalid and no action can be maintained thereon, it matters not what may have been the intention of the makers in delivering it to the obligee. We think the following authorities support these conclusions: Johnson v. Erskine, 9 Texas, 1; Price v. State, 12 Texas Crim. App., 237; Wallen v. State, 18 Texas Crim. App., 414; Hillman v. Mayher, 85 S. W., 818; Board of Education v. Sweeney, 36 Am. St. Rep., 767; Johnston v. Kimball, 33 Am. Rep., 372.

We are of opinion that the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.