KERBOW et al. v. WOOLDRIDGE et al.
(No. 918.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 23, 1916. On Motion for Rehearing, April 5, 1916.)

1. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃80(1) —CONTRACTS—STATUTORY REQUIREMENTS— NECESSITY OF COMPLIANCE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2904n (Acts 33d Leg. c. 120, § 13), providing that no public school building shall be constructed until the board of trustees shall have first secured a permit from the officer legally authorized to issue it, and article 2904o, providing that no person charged with the duty of disbursing school funds shall pay or authorize the payment of any money for the construction of a school building until the permit has been secured, there can be no recovery by the school trustees or by the contractor and his sureties with reference to a building constructed under a contract for which no payment was procured either on the express contract or on an implied contract arising from the benefits resulting from the construction of the pleading.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 191, 193, 194; Dec. Dig. ⊂⊃80(1).]

2. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) —CONTRACTS—SURETIES—LIABILITY OF MATERIALMEN.

The invalidity of a contract for the construction of a school building because no permit was issued for it as required by Vernon's Sayles' Ann. Civ. St. 1914, arts. 2904n, 2904o, does not defeat the right of one who furnished materials or labor for the construction to recover from the sureties of the contractor on the bond to secure such claims given as required by articles 6394f–6394j.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

3. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) — CONTRACTS — BOND — VALIDITY — CONFORMITY TO STATUTE.

Where a bond given by the contractor for a school building under Vernon's Sayles' Ann. Civ. St. 1914, arts. 6394f–6394j, requiring the contractor to give the usual penal bond with the additional provision that he will promptly make payments to all persons supplying him with labor or materials, required the contractor to pay the indebtedness incurred by the trustees for labor and materials instead of that incurred by the contractor, the bond, if not a valid statutory bond, was valid as a common-law obligation.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

4. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) —CONTRACTS—BONDS—CLERICAL ERROR.

In a bond given by a school building contractor which stated that it was for the benefit of those furnishing labor and materials to the contractor, a condition requiring the payment of debts incurred by the school trustees was manifestly a clerical error, and will be construed to secure the payment of debts incurred by a contractor.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

5. PRINCIPAL AND SURETY ⊂⊃101(2) — DISCHARGE OF SURETY—ALTERATION OF THE SURETY CONTRACT—MATERIALITY.

Where a contract for the construction of a school building, to which was attached a bond securing performance, was changed after some of the sureties had signed by pasting a strip of paper over a provision that the money due under the contract should be paid to the superintendent of building and by him disbursed to the materialmen and laborers, the alteration was material, and discharged the sureties who had theretofore signed.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 170; Dec. Dig. ⊂⊃ 101(2).]

6. PRINCIPAL AND SURETY ⊂⊃39 — DISCHARGE OF SURETY—LIABILITY OF COSURETY.

One who signed as surety a bond previously signed by others who were represented to him to be bound thereby when the assured contract had been altered so as to release the liability of the other sureties is not liable on the bond.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 82–85; Dec. Dig. ⊂⊃ 39.]

7. APPEAL AND ERROR ⊂⊃1039(13)—HARMLESS ERROR—VARIANCE.

Where the petition declared upon a school building contract with an interlineation, but the contract as offered had a strip of paper pasted over the interlineation one end of which was loose so the writing could be seen, and the other parties had set out the contract in their pleadings in the altered condition, the admission of the contract, if objectionable because of the variance, could not have surprised the other parties, and the error was therefore harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4086; Dec. Dig. ⊂⊃ 1039(13).]

8. ALTERATION OF INSTRUMENTS ⊂⊃27(3)— DOCUMENTARY EVIDENCE—ALTERED INSTRUMENT—BURDEN OF PROOF.

The burden is on one offering an altered or mutilated writing to explain its condition before it is admissible in evidence.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 242, 243; Dec. Dig. ⊂⊃27(3).]

9. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) —BOND OF CONTRACTOR—ACCEPTANCE.

Permission by the school trustee to the contractor to take down his forfeit money after the presentation of his bond and to proceed with the work is a sufficient acceptance of the bond.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

10. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) — BOND OF CONTRACTOR — DISCHARGE OF SURETY—REJECTION OF BOND.

The refusal of school trustees to accept a contractor's bond when first tendered because the sureties were not sufficient does not terminate the liability of its sureties so as to prevent

the contractor from securing other sureties and again presenting the bond for acceptance.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

11. ACTION ⊂⊃47 — MISJOINDER — CONTRACT AND TORT.

There is no misjoinder of an action in contract by a materialman against the sureties on a school contractor's bond for the value of material furnished and an action against the school trustees for tort committed in failing to take the required statutory bond, since suits in contract and tort may be joined when they grow out of the same transaction.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 469, 470, 472–489; Dec. Dig. ⊂⊃47.]

12. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃81(2) —CONTRACTS—BONDS.

Where a bond given by a school building contractor stated that it was for the benefit of all persons who might furnish labor and material, and provided that it should be satisfied if the contractor should complete the building free of all mechanics' liens, one who furnished material can recover on the bond, though there could be no mechanics' liens on a school building.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 195, 196; Dec. Dig. ⊂⊃81(2).]

On Motion for Rehearing.

13. SCHOOLS AND SCHOOL DISTRICTS ⊂⊃86(2) — CONTRACTS — ACTION — PRESUMPTION — COMPLIANCE WITH STATUTE.

In a suit on a contract for the construction of a school building, compliance with Vernon's Sayles' Ann. Civ. St. art. 2904n, requiring a permit to be secured before a contract for the erection of a school is entered into, must be affirmatively shown; it cannot be presumed in view of article 2904o, prohibiting every disbursing officer from paying out any portion of the funds for the construction of the building until the permit has been secured, since the court should not order an officer to do what may be contrary to the law.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 203–205; Dec. Dig. ⊂⊃86(2).]

14. APPEAL AND ERROR ⊂⊃708—QUESTIONS PRESENTED—FACTS OUTSIDE THE RECORD.

The Court of Civil Appeals cannot consider facts stated in the motion for rehearing, but not shown by the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2948; Dec. Dig. ⊂⊃708.]

Appeal from District Court, Donley County; Hugh L. Umphres, Judge.

Action by Mrs. M. A. Wooldridge, as executrix of the will of J. C. Wooldridge, deceased, against H. C. Kerbow and others, in which R. B. Gatlin filed plea in intervention. From the judgment, defendants appeal. Reversed and remanded, and motion for rehearing overruled.

Simpson & Steed and Harwood Beville, all of Clarendon, for appellants. H. B. White and A. T. Cole, both of Clarendon, R. Y. King, of Hedley, E. F. Ritchey, of Clarendon, and Davis & Davis, of Gainesville, for appellees.

HALL, J. Appellee, as executrix of the will of her deceased husband, by whom this suit was originally instituted, made herself a party to the action, and by a second amended original petition alleged that about the 1st of September, 1913, J. C. Wooldridge, deceased, was the owner of a wholesale and retail lumber yard in Hedley, Tex., and engaged in the sale of lumber and building material; that one of the defendants, E. O. Barnes, was a mechanic and contractor; that E. L. Kennedy, Clark Cook, and William Mace were the duly qualified trustees of common school district No. 2, Donley county, Tex.; that said trustees were desirous of erecting a public school building within said district; that bonds in the sum of $6,000 had previously been voted for that purpose; that said bonds had been sold, and the proceeds thereof were in the hands of said trustees; that the trustees entered into a written contract with E. O. Barnes, a copy of which was attached to the pleading, whereby said Barnes agreed to erect a school building for said district at a price of $5,600; that in order to secure the performance of said contract upon his part Barnes executed a bond in the sum of $2,500, a copy of which was also attached to the pleadings; that said bond inured to the benefit of those who might furnish labor or material in the construction of said building, and was conditioned that the defendant Barnes should pay for all labor and material used in the construction of said building, and that in the event of his failure to do so the laborers and materialmen had a right of action thereon; that the debt for the material furnished by plaintiff was covered by the terms of said bond; said bond was signed by H. C. Kerbow, A. M. Beville, P. A. Buntin, L. C. Barnes, and H. C. Brumley; that by so doing the appellants, as sureties on said bond, became liable to plaintiff in the amount of his debt; that in carrying out his contract the defendant E. O. Barnes purchased from plaintiff a large amount of building material, to wit, about $2,007.97, an itemized sworn statement of which was attached to the pleadings, which said amount was entitled to certain credits, reducing the balance due to $1,738.57; that the defendant E. O. Barnes worked on said building until about the 18th of December, 1913, on which date he abandoned the work, but that the material shown in the account had been purchased by him before such abandonment; that said bond was executed under the general laws of the Thirty-Third Legislature (chapter 99), and that in accordance with the provisions of said act and the breach of the contract by E. O. Barnes plaintiff had instituted this suit against the contractor, sureties on his bond, the school district, and the trustees thereof, for the recovery of his debt; that by reason of the fact of the erection of the school building and the use and enjoyment thereof by the patrons of the district that said dis-

trict and trustees were legally entitled to pay him his debt, and that the material had been purchased by the trustees, together with the contractor.

The appellants the sureties on the bond filed their amended original answer, which contained a general and seventeen special exceptions, a denial that appellants were liable to plaintiff as sureties, and contested the justice of the account against them. It is further alleged that said material was not sold to the trustees or to the school district, but to the contractor, E. O. Barnes, and his subcontractor, S. H. Bolling.

Appellants Beville, Buntin, L. O. Barnes, and Brumley admitted by way of special answer that they had signed the bond, but alleged that after their signatures had been secured the defendant trustees, as co-obligees in said bond, rejected it when tendered to them, because of its insufficiency, and released them from all liability thereon, demanding of the contractor a bond signed by a surety company on pain of forfeiting a check for $200 previously deposited by the contractor; that the said E. O. Barnes never procured a surety company bond; that appellants Beville, Bunting, L. O. Barnes, and Brumley were never afterwards informed that said trustees had rescinded their action in refusing the bond and that they had later approved the same; that said trustees never did thereafter in fact approve said bond; that after they had signed the bond the trustees, acting through their agents, W. I. Mills and B. W. Kieran, who were the superintendents of construction of said building, took the contract which the bond they had given secured, and which said contract was printed on the reverse side of the same sheet of paper containing said bond, both of which instruments were to be considered together, and made a material alteration in the contract by pasting a piece of paper over a clause written into the face thereof, which clause provided that the 80 per cent. of the money due every two weeks on estimates should be paid to W. I. Mills, and by him disbursed; that they would not have signed the bond without said clause being contained therein; that this alteration was made before the contractor, Barnes, had incurred plaintiff's debt.

Appellant Kerbow admitted that he signed the bond set out in the plaintiff's petition, and that the alteration last mentioned had been made therein when he executed it, but that at the time same was presented to him it bore the signatures of his codefendant sureties, and that the school trustees, acting through Mills and Kieran, as their agents, and the contractor, Barnes, represented to him that the other sureties were bound thereon, when said parties knew that the school trustees had rejected the bond with the other sureties, and had released them by materially altering the instrument; that this occurred before the plaintiff's debt had been incurred.

The appellants Beville, Buntin, L. O. Barnes, and Brumley further alleged that when they signed the bond the contract which it was given to secure contained a clause providing that the money due in the construction of said building should be paid to W. I. Mills, and by him disbursed, and he should be superintendent of construction; that in violation of said provision the trustees discharged Mills, and refused to pay any money into his hands, but paid the moneys due for work on the building directly to the contractor, E. O. Barnes, and to the subcontractor, S. H. Bolling; that this occurred before the major portion of plaintiff's debt had been incurred; and that said four appellants were therefore released.

All five of the sureties further alleged that the contract between the school district and E. O. Barnes provided that the building should be completed within 60 days from the time notice was served to proceed with the work, the time to be extended only on the happening of certain contingencies mentioned in the contract; that in violation of said clause in said contract, and without the happening of any of the contingencies mentioned therein, the trustees extended the time for the completion of the building more than 2 months; that said extension contract was made between the trustees and E. O. Barnes, the consideration for which was the promise on the part of the trustees not to charge the contractor, Barnes, with the damages provided in the contract for delay and the agreement on the part of the contractor, Barnes, to labor on the building after the contract time for the completion thereof had expired; that a large part of the plaintiff's debt was incurred after the extension was granted; that the contract which the bond was given to secure provided that no portion of the work should be sublet without the written consent of the architect; that in violation of said clause, and without obtaining the consent of the architect, the school district and its trustees permitted the contractor, Barnes, to sublet a large portion of the work on the building to one S. H. Bolling; that the subletting was done without the knowledge of appellants, but with the knowledge of the original plaintiff, J. O. Wooldridge; that the plaintiff sold to S. H. Bolling $826.77 worth of the material for the value of which suit was brought, knowing that Bolling was a subcontractor in violation of the terms of the contract; hence appellants were released; that the trustees refused to pay to the contractor, E. O. Barnes, or his superintendent, W. I. Mills, the money due upon certain estimates regularly allowed by the superintendent of construction, and on other occasions refused to allow estimates when the same were due, so that the contractor, Barnes, was forced to abandon work on said building, by reason of which wrongs these

appellants asked judgment over against the school trustees for the amount of any judgment plaintiff might secure against them; that, when the contractor, Barnes, abandoned work on the building, there was about $867.35 worth of the material which had been furnished by plaintiff lying on the ground near the building, and that plaintiff could have recovered the same by the use of any diligence, thus saving himself from loss to that extent, but that he negligently failed to do so, and permitted the material to be worked into the building by one Chism, who completed the work after the contractor, Barnes, defaulted; hence they were not liable for this sum; that under the terms of the bond they were bound, if at all, as sureties, to pay only such debts as might be incurred by the school trustees in the construction of the building, and alleged that the debt of plaintiff was not incurred by the school trustees, but by the contractor, E. O. Barnes, and that even he was not bound to pay for same, but was only required to provide and furnish material; that the school district and its trustees overpaid on the work as it progressed during the construction of the building, in violation of the terms of the contract, thus releasing appellants.

R. B. Gatlin filed a plea in intervention, alleging that he was interested in the subject-matter; that he was a laborer on the building, together with a large number of other persons named in his pleading; that he and the others had been hired by the contractor, E. O. Barnes, who owed intervener, and the other parties named in the plea, the various sums shown in sworn accounts attached to the plea for labor done on the building; that said Barnes and the sureties on his bond were obligated to pay him all the sums set forth in his plea, alleging that he had purchased all of said accounts from the original creditors.

Appellants replied to the plea of intervention by general and special exceptions, general denial, and specially answered that they were bound, if at all, on the bond to pay debts incurred by the trustees only, and that the intervener's debt was incurred by the contractor, Barnes, and not by the trustees; that $173.50 of the claim of one Geo. Ryan sued for by the intervener was for money loaned by Ryan to the contractor, Barnes, so they could not be liable therefor.

The defendants the school trustees filed a plea of misjoinder of parties and of causes of action, because the plaintiff was seeking to hold the sureties liable upon a contract and the trustees liable because of a tort committed in failing to take the bond required by law and in breaching the same after it was taken. By way of cross-action the trustees alleged that common school district No. 2 of Donley county was in need of a new school building, for which bonds in the sum of $6,000 had been voted; that they let the contract for the erection of the build-

ing to E. O. Barnes; that he was to complete the same within 60 days from the time notice was served upon him to proceed with the work; that his contract, a copy of which was attached to their cross-action, provided that, if he failed to finish the work within the contract time, he should pay to said trustees as liquidated damages the sum of $10 per day for each day's delay; that as a prerequisite to the taking effect of said contract they required the said Barnes to execute a bond to them in the sum of $2,500, signed by the appellants Kerbow, Beville, Buntin, L. C. Barnes, and Brumley, whereby the sureties upon said bond became liable to said trustees for any sums they might be forced to pay out above the contract price and for all damages occasioned by delay; that the said E. O. Barnes did not complete the building within the time, and abandoned the work about the 18th day of December, 1913; that about the 27th day of December, 1913, they notified the sureties of his default; that they then took possession of the building and of the material on hand, and as soon as possible advertised for bids to complete the building; that the smallest bid received was $2,904.25, which was $223.93 more than the contract price, for which amount they asked judgment against the sureties on the bond. It is further alleged that by reason of the default of the contract of E. O. Barnes the trustees were deprived of the building 135 days over the contract time, and asked judgment against appellants for the further sum of $1,350, being $10 per day for said delay, which they alleged was a reasonable damage to the school district; that some person unknown to them committed spoliation upon the contract made between them and E. O. Barnes by writing into the face of the same after it had been signed by them as trustees, and by Barnes, the following: "The eighty per cent. as allowed by the superintendent, W. I. Mills, shall be paid to the said W. I. Mills, who will disburse the same to all who have furnished labor and material equally"—alleging that said clause was no part of said contract; that when said contract and bond was finally delivered to them, accepted, and approved that a piece of paper had been pasted over said clause, leaving the same in its natural state. They prayed that the contract be reformed so as to read as originally executed, and that said clause be stricken out of the same.

The bondsmen, by first amended original answer to the cross-action of the trustees against them and to the plea of intervention, after certain special exceptions, pleaded a contract and agreement made upon a sufficient consideration between the trustees and E. O. Barnes, by which they agreed not to charge him with overtime used in the work on the building; that the trustees further knowingly permitted the contractor to sublet a portion of the work in violation of the contract; that they paid the money due for

the work on the building to E. O. Barnes and S. H. Bolling, instead of W. I. Mills; that after they had all signed the bond, except appellant Kerbow, the trustees refused to accept the same and rejected it; that the trustees, through their agents, materially altered the contract and bond by striking out the clause which provided that the money should be paid to W. I. Mills. Appellant bondsman Kerbow alleged that said trustees, through their agents, perpetrated a fraud upon him in procuring him to sign the bond by representing that the other appellants were bound thereon, when they knew the bond had been rejected; that they altered the bond and contract, thus releasing them; that the $200 attorney's fees sued for by said trustees and the damages for overtime were not included in the terms of suretyship in said bond; that said trustees failed to give the sureties any notice of the default of the contractor until about two months had expired. They denied that the trustees let the contract for the completion of the building by a public bid and for the least sum obtainable. Estoppel against the trustees in the recovery of $223 is set up, alleging that the trustees overpaid the work to E. O. Barnes and S. H. Bolling in violation of the contract, and that they refused to pay E. O. Barnes and Mills the money due upon certain estimates made by the superintendent of said building, and refused to permit certain estimates to be made when they were due, and by so doing prevented the contractor, Barnes, from completing the building, which he would have done if not prevented by said trustees. The prayer is for judgment over against the trustees for the amount of any judgment that might be taken because of their wrong.

The plaintiff, Mrs. Wooldridge, by first supplemental petition, among other exceptions and pleas, alleged that in the sale of the materials to the contractor, Barnes, her deceased husband relied upon the school trustees having required such a bond in conformity of law; that such trustees informed plaintiff's agent before the sale was made that such a bond had been taken, and said trustees personally guaranteed to plaintiff the payment of his debt in full.

A jury was impaneled to try the issues. Upon the close of the testimony the trial judge withdrew the issues from the jury, and instructed a verdict upon the bond against E. O. Barnes, as principal, and his sureties, in favor of the plaintiff in the sum of $1,889.45, and in favor of common school district No. 2 against the principal and sureties on the bond in the sum of $1,572, and in favor of the intervener, Gatlin, against the same parties for the sum of $352.90, and in favor of Gatlin against E. O. Barnes alone in the sum of $184.50, and in favor of the defendants the trustees, Kennedy, Mace, and Cook, as against all parties. Up-

on the return of the verdict a judgment was entered in conformity therewith, the judgment providing that the claim of the common school district, amounting to $1,573, should be first paid from the proceeds of the judgment, and that the plaintiff and intervener, Gatlin, should participate in any amount remaining.

Plaintiff filed a motion to reform the judgment. The motion was granted, and the court gave the school district priority in the judgment for the sum of $223 only, being the amount which the district was forced to pay to complete the building over and above the contract price. The judgment as reformed further provides that plaintiff and intervener, Gatlin, should next be paid the amount of their claims proportionately, and, if any sum remained, that it should be applied to the balance due the school district.

[1] We are confronted with fundamental error upon the very threshold of the case. In the formation of the contract between the trustee and E. O. Barnes the parties have overlooked Acts 1913, c. 120, p. 244, which is incorporated in Vernon's Sayles' Civil Statutes as chapter 19A, tit. 48. This act was operative when the building in question was constructed. It declares in detail what shall be done in the construction of public school buildings with reference to providing light, heat, ventilation, etc., for the pupils. Vernon's Sayles' Civil Statutes, art. 2904n (section 13 of the act), provides that no public school building shall be constructed in this state at an expense of more than $400 until the board of trustees of the district in which the work is to be done shall have first secured a school building permit from the officer legally authorized to issue it certifying that the plans and specifications of the proposed building conform to hygienic, sanitary, and protective regulations established by this act for public school buildings in Texas. The article further provides that for buildings in common school districts the county superintendent of public instruction of the county in which the school is to be located is required to examine the plans for such building and to grant the permit. Article 2904o provides that no person charged with the duty of disbursing school funds or of authorizing disbursement of school funds in the state shall pay or authorize the payment of any vouchers or in any other manner pay out any sum of public money for the construction of any school building at an expense of more than $400 until such permit has been secured, and that any disbursing officer failing to observe the provisions of the act shall be held liable for such amounts so paid out.

In Bone v. Black, 174 S. W. 971, this court held that under the provisions of the act a contract for the erection of a school building could not be enforced where it did not appear that a permit had been issued by

the proper officer. While in that case the building had not been constructed, the rights of the contracting parties are in no degree altered because of the erection of the building and the consequential benefits to the district. The failure of the parties to contract strictly in accordance with the terms of the statute renders the contract itself void and precludes a recovery upon an implied contract. Section 51 of the drainage act of 1907 (Acts 30th Leg. c. 40) provides that the commissioners may employ counsel to represent the district "upon such terms and for such fees as may be agreed upon by them and approved by the county judge." Matagorda County Drainage District v. Gaines & Corbett, 140 S. W. 370, is a case in which the appellees, as attorneys, sought to recover fees alleged to be due them from the drainage district for professional services rendered the commissioners. They recovered in the lower court, but upon appeal Judge Fly reversed and rendered the judgment, saying:

"It was clearly the intent of the Legislature to require as an essential the approval of the chief officer of the county. The official watchman of the county treasury undoubtedly by this requirement was made to safeguard and protect the fund that was raised by taxation of the inhabitants of a district, and to render more difficult the making of contracts which might squander a fund raised for the public good. The authority to contract for the services of attorneys is given by section 51 alone to drainage commissioners, and to that we must look to ascertain the mode of exercising the power. The law requires the approval of the county judge of contracts made by drainage commissioners for legal services, just as it requires the approval of contracts for canals and other improvements by the county judge. It is the rule, stated by Dillon in his work on Municipal Corporations (5th Ed.) § 783, and fortified by numerous authorities, that when the mode of contracting is specially and plainly prescribed and limited, that mode is exclusive, and must be pursued, or the contract will not bind the corporation. The rule is a salutary one, upholding the legislative checks and restraints put upon the officers of municipal corporations, and strictly construing the powers conferred upon them in the disbursement of public funds. To hold that a contract made in a different mode from the exclusive one prescribed by the Legislature can be enforced would be to nullify and destroy the law, and to set up judicial discretion or judicial pleasure instead thereof. Experience has taught how prone municipal officers are to squander and dissipate public funds, even when held to the strict letter of their warrant of authority, and, if requirements of the statute which the Legislature has deemed necessary can be set aside by a court, the last safeguard has been destroyed, and the public left at the mercy of improvident or unscrupulous servants. Drainage commissioners are the agents of their respective districts in attending to and superintending its affairs; but, when debts are to be incurred and money expended, the law provides that they cannot act without the approval of the county judge. The mode of incurring liabilities is prescribed by statute, and as said by Chief Justice Roberts in Ferguson v. Halsell, 47 Tex. 421: 'The prescribing of a mode of exercising a power by such subordinate agencies of the government has often been held to be a restriction to that mode.' In the case of Bryan v. Page, 51 Tex. 532, 32

Am. Rep. 637, a suit was instituted to recover of the city of Bryan the reasonable value of legal services rendered under employment by the mayor, and the court, in reversing and rendering judgment for the city, held: 'The charter gave the power to employ legal counsel, but prescribed that the power be exercised by, or at all events in accordance with, an ordinance of the common council. The charter, the source of all the power of the mayor or council over the subject, having limited the mode of its exercise, they could not in a different mode make a valid contract; nor could they by any subsequent approval or conduct impart validity to such contract.' To the same effect is Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263. The authorities cited, as well as various others, hold that, where the power of contracting is limited to a certain mode, the officers of a municipal corporation cannot in a different mode make a valid contract, nor can they by any subsequent approval or conduct vitalize such contract, nor would the law imply such contract. * * * As said by the Court of Appeals of New York, in Smith v. City of Newburgh, 77 N. Y. 131: 'An absolute excess of authority by the officers of a corporation in violation of law cannot be upheld; and, when the officers of such a body fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound in such cases. The statute must be strictly followed, and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective.' "

See also McDonald v. New York, 68 N. Y. 23, 23 Am. Rep. 144; Peck v. City of Hempstead, 27 Tex. Civ. App. 80, 65 S. W. 653; 10 R. C. L. p. 708, § 36; Id., p. 801, § 112.

In Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659, the following language from State Board v. Citizens' Ry. Co., 47 Ind. 407, 17 Am. Rep. 702, is approved:

"Although there may be a defect of power in a corporation to make a contract, yet, if a contract made by it is not in violation of its charter, or of any statute prohibiting it, and the corporation has by its promise induced a party relying on the promise and in execution of the contract to expend money and perform his part thereof, the corporation is liable on the contract."

A pleading based upon a contract which must be executed in accordance with the terms of the statute must allege facts showing compliance with its requirements in order to be good as against a general demurrer. Crowell Independent School District v. First National Bank of Benjamin, 163 S. W. 339; McCollum v. Adams, 110 S. W. 526. In the note to McCormick v. Niles, 27 L. R. A. (N. S.) p. 1120, the law applicable to the liability of municipal corporations for benefits received under contracts violative of statutory restrictions is stated as follows:

"By the great weight of authority where by statute the power of a municipality or other public corporation to make a contract is limited to a certain manner and under certain circumstances, and any other manner of entering into a contract, agreement, or obligation is expressly or impliedly forbidden, no implied liability can arise against the municipality for benefits received under a contract within the scope of such statute and violative thereof."

It follows that neither the school district nor the contractor and his sureties can re-

cover anything from the other by reason of the written contract or upon an implied contract.

[2] Appellants claim that the bond in this case was executed under Acts of the Legislature of 1913, c. 99, (Vernon's Sayles' Civil Statutes, arts. 6394f to 6394j, inclusive). A comparison of this act with Act Cong. of Feb. 24, 1905, c. 778, 33 Stat. 811 (U. S. Comp. St. 1913, § 6923), shows that they are practically identical, and that the Texas statute has been passed after the federal statute. Investigation shows that several of the states have adopted the provisions of the federal statute, and that the purpose of such enactment in all cases is to assure the payment of debts incurred in the construction of public buildings to mechanics and materialmen. Under the law as it existed prior to the enactment of this statute, mechanics and materialmen could acquire no lien upon public buildings. Although the contract, in our opinion, as heretofore stated, is void, it does not follow that the obligation resting upon the sureties in the contractor's bond is discharged; on the contrary, the weight of authority is that the invalidity of the building contract in no way affects the liability of the sureties upon the contractor's bond for the value of materials and labor furnished the contractor in the prosecution of the public work. 4 Elliott on Contracts, § 3543; Knight & Jillson Co. v. Castle, 27 L. R. A. (N. S.) 597, note 13; Bell v. Kirkland, 102 Minn. 213, 113 N. W. 271, 13 L. R. A. (N. S.) 793 and note, 120 Am. St. Rep. 621.

[3] The bond upon which this suit is based is substantially as follows:

"Know all men by these presents that we, E. O. Barnes and the other subscribers hereto, of the city of ——, county of Donley, state of Texas, are held and firmly bound unto the trustees of common school district No. 2 of the city of ——, county of Donley, state of Texas, as well as to all persons who may furnish labor or material on the contract hereinbefore mentioned, in the sum of twenty-five hundred ($2,500.-00) dollars, lawful money of the United States of America, to be paid to the said trustees and to said parties who may furnish labor or material, their executors, administrators, or assigns, for which payment well and truly to be made we bind ourselves, one and each of our heirs, executors, and administrators, jointly and severally firmly by these presents. Sealed with our hands. Dated this 26th day of July, 1913. The condition of this obligation is such that, if the above-bounden E. O. Barnes, his executors, administrators, or assigns, shall in all things stand to and abide by and well and truly keep and perform the covenants, conditions, and agreements in the above-mentioned contract entered into by and between the said E. O. Barnes and the said trustees, dated on the 26th day of July, 1913, for the construction of the work or works on the lot mentioned in the foregoing contract, and shall duly and promptly pay and discharge all indebtedness that may be incurred by the said trustees in carrying out the said contract, and complete the same free of all mechanics' liens, and shall truly keep and perform the covenants, conditions, and agreements in said contract and in the within instrument contained on his part to be kept and performed, at the time and in the manner and form therein specified, as well as all costs, including attor-

ney's fees, in enforcing the payment and collection of any and all indebtedness incurred by said trustees in carrying out the said contract, then the above obligation shall be void, else to remain in full force and virtue. This bond is made for the use and benefit of all persons who may furnish labor or material on the hereinbefore mentioned contract, according to the provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person.

"In testimony whereof," etc.

The statute above mentioned provides that the contractor shall execute the usual penal bond, with good and sufficient sureties, with the additional obligation that such contractor shall promptly make payments to all persons supplying him with labor and material in the prosecution of the work provided for in said contract. The bond is in substantial compliance with this requirement of the statute in obligating the contractor to duly and promptly pay and discharge all indebtedness that may be incurred by the said trustees in carrying out the said contract, and to complete the same free of all mechanics' liens, unless it be that it binds the sureties to pay the indebtedness incurred by the trustees instead of indebtedness incurred by the contractor. There is considerable contention on the part of the parties as to whether this is a statutory bond or merely a common-law obligation. We incline to the opinion that in its essential parts it is in conformity with the requirements of the statute, but in any event, if liability has otherwise accrued under it, so far as its form is concerned, it would be good as a common-law bond. The right of action arising from a breach of this bond is one of common-law liability, and does not depend upon the existence of the statute. Even without the statute, or without a bond of any kind, the materialmen and laborers would be entitled to recover against Barnes upon his common-law liability. State v. Teague, 50 Tex. Civ. App. 535, 111 S. W. 234; Knight & Jillson Co. v. Castle, supra, 27 L. R. A. (N. S.) 581, note 6; Dillon, Municipal Corporations (5th Ed.) § 830.

[4] Under several assignments of error appellants contend that, because the bond provides that it shall be void if payment is made for all material and labor debts incurred by the school trustees, and the undisputed proof shows the debts were incurred by the contractor, and not by the trustees, no liability attaches to the sureties. The question was raised in the court below by exceptions, plea, special charge, and objections to evidence. Ordinarily such a bond is a dual obligation (Equitable Surety Co. v. United States, to Use of McMillan & Son, 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394), evidencing the terms of an undertaking between the trustees, on the one hand, and the contractor and his sureties, on the other. The original contract being void, the obligation to the trustees is a nullity. It also constitutes an obligation between the latter and all persons who may furnish labor and material in the

construction of the building. Considered in this aspect, it must be liberally construed. Equitable Surety Co. v. United States, supra. The contract referred to in the bond is the building contract, which the evidence shows was written upon the same paper, and must be construed in connection with the bond. By referring to the contract it will be seen that the contractor covenanted and agreed with the trustees of said school district that he would provide and furnish labor and materials of such kind, quality, and description as might be proper and sufficient for completing and finishing all the work mentioned in the contract. It is clear from the record that the use of the word "trustees" in the bond, instead of the word "contractor," is a clerical error, and a mistake of the scrivener. The rule is that such mistakes do not have the effect of releasing the parties from the contract, but the court will correct the mistake and construe the writing which evidently does not speak the original intention of the parties so as to make it conform thereto. 1 Elliott on Contracts, § 809; 2 Elliott on Contracts, § 966; 3 Elliott on Contracts, §§ 2367, 2378.

[5] The next contention urged is that, the contract having been altered in a material term, the effect of it is to release the sureties upon the bond from all liability. The facts are that after E. O. Barnes had been awarded the contract, and its terms had been reduced to writing and signed by him and the trustees, the contractor then took the instrument and endeavored to obtain sureties upon his bond satisfactory to the trustees; that he approached A. M. Beville, who consented to become a surety, but before signing the bond wrote into that part of the contract which provides that the trustees shall pay the contractor on certificates of the superintendent from time to time as the work progressed 80 per cent. of the estimated value of the work this clause:

"And the 80 per cent., as allowed by the superintendent, W. I. Mills, shall be paid to the said W. I. Mills, who will disburse the same to all who have furnished labor or material equally."

L. C. Barnes, the father of the contractor, H. C. Brumley, and P. A. Buntin, signed the bond while the contract had in it the words inserted by Beville as above stated; Buntin signing in pencil. The trustees declined to accept the bond for the reason that the sureties were not considered sufficient. The contractor then contemplated executing a bond with a surety company as his surety, but, being informed that the clause inserted by Beville in the contract would militate against his obtaining a bond signed by a surety company, he pasted a paper over the clause, effectually concealing the words. Failing to obtain the surety company upon the bond, H. C. Kerbow signed it as an additional surety, knowing nothing of the insertion of the words in the contract by Beville, or that they

had been concealed by pasting the piece of paper over them. At this time Buntin again signed it with ink. When Kerbow executed the bond with the clause inserted by Beville covered up, the trustees, considering it good for the amount, accepted it, knowing that Beville had interlined it, and that Barnes had pasted paper over the clause inserted.

When Beville made the interlineation in the contract neither the principal, Barnes, nor any of the sureties had executed the bond,. though the contract had been signed by the trustees. An alteration of the contract before the bond, which in this connection must be considered as a part of it, was executed by the principal and sureties, did not avoid the bond as to them, nor as to the trustees if the latter accepted the instruments with knowledge of the change. Prior to the interlineation by Beville the contract bound the trustees to pay to the contractor 80 per cent. of the estimated value of the work. Subsequent to the interlineation the contract bound the trustees to pay the money to the superintendent, Mills, by whom it was provided it should be paid upon debts for labor and material. It is apparent that this term is material, a change of which might greatly affect the liability of the sureties to laborers and materialmen. However, the contract being void, because not approved by the county superintendent of public schools, as required by the statute, it is a matter of no importance except in so far as it may affect the obligation of the sureties to those furnishing labor and material in the construction of the building.

[6-9] The act of the contractor, Barnes, in pasting the slip of paper over the interlineation materially changed the contract which the sureties, by their undertaking in the bond, had guaranteed, resulting in a release from liability of the sureties, with the possible exception of Kerbow and Buntin. Kerbow alleged facts which, if proven, may also entitle him to be released, but Buntin has not by his pleadings set up any facts which would, if true, release him. The amended petition declared upon the contract as interlined by Barnes, and had a copy of it attached as an exhibit. To sustain the allegation plaintiff offered in evidence a contract in which the interlined clause had a slip pasted over it, but torn loose at one end. This constituted a variance. However, since one party had declared upon it in its original condition, and the other parties set it out in their pleadings in its altered condition, and the slip pasted over the interlineation was raised so the writing could be seen, appellants could not have been surprised, and the action of the court in overruling the objection, if error, was harmless. The burden is upon the one offering an altered or mutilated writing to explain its condition before it is admissible in evidence. The fact that the trustees permitted Barnes to take down his forfeit money

after the presentation of the bond and to proceed with the work is a sufficient acceptance.

[10] There is no merit in the contention that the refusal of the trustees to accept the bond when first tendered them, because the sureties were not sufficient, terminated the liability of sureties then upon it. There is nothing in the record which would prohibit Barnes from adding other sureties and again presenting it to the trustees for acceptance. There was an issue made by the pleadings and evidence as to the item of $12 for lime which should have been submitted to the jury.

[11] The pleadings show no misjoinder of either parties or causes of action. Suits upon contracts and torts may be joined when they grow out of the same transaction. Hoskins v. Velasco National Bank, 48 Tex. Civ. App. 246, 107 S. W. 598; Hooks v. Fitzenrieter, 76 Tex. 277, 13 S. W. 230.

[12] Appellant contends under the fifteenth assignment that, because the condition of the bond is that Barnes shall duly and promptly pay and discharge all indebtedness. etc., and complete the building free of all mechanics' liens, the exception to the amended petition should have been sustained, because the petition fails to show that either the plaintiff or intervener, Gatlin, had a mechanic's lien fixed upon the building. The bond expressly provides that it is made for the use and benefit of all persons who may furnish labor or material, and, if considered as a common-law bond, the labor done and material furnished is a sufficient consideration to support it. It was alleged that Barnes did partially comply with the condition named in the bond, and the words, "free of all mechanics' liens" may be considered as surplusage and still the instrument be complete as an obligation. The statute under which this bond was executed, was designed to provide security as a substitute for the lien which might otherwise exist in favor of mechanics and materialmen, such lien not being permissible upon a public building, for which reason the federal courts, in construing the statute from which the Texas statute was evidently drawn, have always given it a liberal construction in favor of laborers and materialmen, and we think the rule should be applied here. Equitable Surety Co. v. United States to Use of McMillan & Sons, 234 U. S. 448, 34 Sup. Ct. 803, 58 L. Ed. 1394. Besides the issue as to whether all of the material charged in the itemized bill was used in the building, there are other issues of fact which the court should have submitted to the jury.

The transcript in this case contains over 260 pages, nearly half of which is taken up by the pleadings of the parties. The pleadings of all parties are unnecessarily prolix, and before another trial the court should order a repleader.

For the errors pointed out and because the court directed a verdict, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[13] Appellants insist that, since the contract was entered into between the contractor and the trustees, we should presume that the permit required by Vernon's Sayles' Civil Statutes, art. 2904n, was previously issued. By the explicit terms of section 14, c. 120, Acts of 1913 (article 2904o), every disbursing officer of school funds is prohibited from paying out any portion of such funds for the construction of a building costing more than $400, until the permit required by the act has been procured; and a violation of this inhibition renders the disbursing officer liable for the sum so paid. Certainly a party who seeks to recover any part of such fund should show by his pleadings that he has met the condition precedent upon which his right to demand the money of the disbursing officer depends. No court should by its judgment require the payment of a claim to which the claimant was not entitled without suit, and it is fundamental that his pleadings should allege every fact necessary to a recovery. If the permit has, in fact, been issued, the pleadings should show it, and because they do not they are subject to general demurrer, and the error is fundamental. The requirement that the permit be obtained relates to the power and authority of the parties to contract, rather than to its form when the contract is made. Reynolds v. Schweinefus, 27 Ohio St. 313, is a case where the power of a city council to improve the streets of the city, without the prior recommendation of the board of city improvement was involved. In discussing the presumption of the performance of official duty, Ashburn, J., said:

"When a statute requires an act to be done, and gives no direction as to the mode of performance, and proceedings are had in the direction of performance, the duty will be presumed to have been rightfully performed until the contrary is made to appear. This presumption does not arise so strongly in regard to the exercise of power as to the performance of duty under the power. * * * So that, in cases where restraint is put upon their action by statute, and they can only act upon the authority of a report and recommendation of another body, it would not be wise, by mere construction, to lessen the force of the restraint to presume jurisdiction simply because of its exercise."

The classification and appraisement of public lands before they are placed upon the market by the land commissioner and sold must not only be alleged, but proved.

"The establishment of that distinct fact has been held to be one of the essentials of a plaintiff's case, so that no recovery can be had without it." Anderson v. Walker, 95 Tex. 596. 68 S. W. 981; Hardman v. Crawford, 95 Tex. 193, 66 S. W. 206; Thompson v. Gallagher, 32 Tex. Civ. App. 591, 75 S. W. 567, writ of error denied, 97 Tex. 649, 77 S. W. xv.

[14] In our opinion, the statute in question limits the power of the parties to contract. It appears from the motions for rehearing

that the statute had been complied with, but the record fails to show it, and we cannot consider questions presented which could properly arise only under a record showing compliance with the statute. That portion of the opinion in which it is stated that the bond, as between materialmen and laborers, upon the one part, and the contractor and his bondsmen, on the other, should be liberally construed, is probably a too generous statement of the rule, and that expression is withdrawn. In all other respects we think we have correctly announced the rules of law which should govern in another trial, and the motions for rehearing are overruled.